2006 UT App 515

**TANGREN FAMILY TRUST, by Richard TANGREN, Trustee, and Richard Tan-gren, Individually, Plaintiff and Appel-lee,**

v.

**Rodney TANGREN, Defendant and Appellant.**

No. 20050085–CA.

Court of Appeals of Utah.

Dec. 29, 2006.

Matthew P. Jube, Provo, Young, Kester & Petro, for Appellant.

Craig C. Halls, Blanding, for Appellee.

Before BENCH, P.J., BILLINGS and DAVIS, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Rodney Tangren (Defendant) appeals the decision of the trial court invalidating a lease agreement between Defendant and his father Richard Tangren (Plaintiff). We reverse and remand.

## BACKGROUND

¶ 2 This dispute arose out of the joint efforts of Plaintiff and Defendant to develop 135 acres of unimproved land (the Land) near the Colorado River into a dude ranch. In 1981, Plaintiff purchased the Land from the State Institutional Trust Lands and the Bureau of Land Management. The Land has since been held in trust by the Tangren Family Trust, of which Plaintiff is the trustee and Defendant is a beneficiary.

¶ 3 In the years following his purchase of the Land, Plaintiff commenced work on the dude ranch. He built a two-story structure with a basement and blasted areas out of the side of the mountain, complete with connecting tunnels, to be used as storage areas and potential guest quarters. Plaintiff also created recreational amenities on the Land, including a baseball diamond, a shooting range, an airplane runway, and horse corrals. Plaintiff enlisted Defendant to help in developing the Land into a commercially viable dude ranch, keeping Defendant on the payroll of Plaintiff's fencing company while Defendant worked on the Land.

¶ 4 Defendant eventually became concerned that his investment of capital and time could be lost once the dude ranch became profitable. He worried that his siblings, also beneficiaries of the Tangren Family Trust, would attempt to take away his stake in the project. In 1992, responding to Defendant's concerns, Plaintiff prepared, and both parties entered into, a lease agreement (the Lease). Under the terms of the Lease, Plaintiff leased the Land to Defendant for a period of ninety-nine years. The Lease was re-executed in 1994 with the only difference being the deletion of Defendant's wife as a named lessee. The Lease required Defendant to pay Plaintiff $275 per month, which covered rent, taxes, and insurance. Both the

1992 lease and the 1994 lease included the same integration clause, stating that the Lease contained "the entire understanding between the parties with respect to its subject-matter, the [Land] and all aspects of the relationship between Lessee and Lessor." Defendant recorded the Lease in 2001, after Defendant's relationship with Plaintiff deteriorated. In 2002, after sending multiple notices of default, Plaintiff filed a complaint in district court seeking to evict Defendant from the Land and to recover damages under the terms of the Lease. Defendant claimed that he was not in default because he paid the rent in cash and even tendered checks to cover any unpaid balance.

¶ 5 At trial, the court considered extrinsic evidence concerning the intent of the parties in creating the Lease. Plaintiff claimed that Defendant was in default or, in the alternative, that the Lease was created only to protect Defendant's interest from the other Tangren Family Trust beneficiaries should Plaintiff pass away. Further, Plaintiff testified that the Lease was not to be recorded prior to Plaintiff's death. Defendant claimed that the parties intended the Lease to be an enforceable contract and that he had not breached it. Following a three-day bench trial, the court issued an order invalidating the Lease. The trial court found that the Lease was created only to prevent Defendant's siblings from encroaching on Defendant's investment and that the Lease was not meant to govern the relationship between Plaintiff and Defendant. The trial court therefore ordered Defendant off the Land and provided for the timely removal of Defendant's personal property. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 The parties have raised multiple issues that stem from the trial court's interpretation of the Lease. A trial court's determination as to whether a contract is integrated is a question of fact. *See Cantamar, L.L.C. v. Champagne,* 2006 UT App 321, ¶ 11, 142 P.3d 140; *Eie v. St. Benedict's Hosp.,* 638

P.2d 1190, 1194 (Utah 1981). Whether a contract is ambiguous is a question of law. *See WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 22, 54 P.3d 1139; *Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991). We review questions of fact under the clearly erroneous standard and questions of law for correctness. *See State v. Pena,* 869 P.2d 932, 935–36 (Utah 1994).

## ANALYSIS

¶ 7 Defendant claims that the Lease is a valid, enforceable agreement that governs the parties' interests in the Land, and that the court impermissibly considered parol evidence in invalidating the Lease. In the absence of fraud, the parol evidence rule excludes "contemporaneous conversations, statements, or representations, offered for the purpose of varying or adding to the terms of an *integrated* contract." *Union Bank v. Swenson,* 707 P.2d 663, 665 (Utah 1985).

> The application of the parol evidence rule involves two steps. First, the court must consider whether the agreement is integrated. If the court finds [that] the agreement is integrated, then parol evidence may be admitted only if the court makes a subsequent determination that the language of the agreement is ambiguous.

*Hall v. Process Instruments & Control, Inc.,* 890 P.2d 1024, 1027 (Utah 1995). Any relevant evidence, including parol evidence, is admissible in the preliminary determination of integration. Courts must, however, "apply a rebuttable presumption that a writing which on its face appears to be an integrated agreement is what it appears to be." *Union Bank,* 707 P.2d at 665.

### I. Integration

¶ 8 Defendant claims that the trial court erred in using extrinsic evidence to invalidate the Lease.[1] Though the question of integration is a question of fact for which the trial court may consider any relevant evidence, *see id.,* the party challenging the ap-

---

1. The trial court's invalidation of the Lease based on extrinsic evidence includes the implicit determination that the agreement was not integrated and therefore was subject to modification via extrinsic evidence.

plication of the parol evidence rule must overcome the presumption that a "writing which on its face appears to be an integrated agreement is what it appears to be." *Id.* The agreement in the instant case includes an integration clause titled "Entire Agreement," which states that the Lease contains the entire understanding between the parties with respect to the Land and to the lessor-lessee relationship. The supreme court has recently reiterated the importance and purpose of integration clauses in contracts:

> [Integration] clauses are routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated.... [T]he purpose and effect of including [an integration] clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document.

*Ford v. American Express Fin. Advisors, Inc.*, 2004 UT 70, ¶ 28, 98 P.3d 15 (quotations and citation omitted). Here, the record reflects that Plaintiff worked closely with his attorneys during the drafting of the Lease. Plaintiff testified that he went against his attorneys' advice in altering some of the terms of the Lease after it was drafted and prior to having Defendant sign, including the unusually long term of the Lease and the low monthly rental payment schedule. In both the 1992 lease and the 1994 lease, Plaintiff included the same integration clause.

■ ¶ 9 At trial, Plaintiff testified that he intended the Lease to become effective only to protect Defendant from his siblings in the event of Plaintiff's death. This testimony is the sole evidence on which the trial court could have based its ruling that the Lease was invalid. Utah law has a stated preference for gleaning the intent of contracting parties, "whenever possible, from written documents rather than from self-serving testimony." *Glauser Storage, L.L.C. v. Smedley*, 2001 UT App 141, ¶ 20, 27 P.3d 565; *see also Lee v. Barnes*, 1999 UT App 126, ¶ 9, 977 P.2d 550. Plaintiff has not overcome the presumption of integration. *See Union Bank*, 707 P.2d at 665. The lease in question contains a clear and unambiguous integration clause, the purpose of which is to "preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements." *Ford*, 2004 UT 70 at ¶ 28, 98 P.3d 15 (quotations and citation omitted). While the trial court could consider Plaintiff's testimony regarding his intent in creating the Lease, the court erred in relying on that testimony in the face of a clear and unambiguous integration clause in the Lease itself. *See Cantamar*, 2006 UT App 321 at ¶ 11, 142 P.3d 140. We therefore hold that the trial court's findings as to integration were clearly erroneous. The Lease is an integrated agreement, against which parol evidence may not be admitted absent some ambiguity in the terms of the Lease. *See Hall*, 890 P.2d at 1027.

## II. Ambiguity

¶ 10 Because we hold that the Lease is an integrated agreement, we now consider whether the Lease contains any ambiguities that would justify the trial court's decision to consider the parol evidence offered by the parties. Despite neither party arguing that the language of the Lease creates any ambiguity, we discuss ambiguity in order to complete the two-step analysis discussed in *Hall*: "If the court finds [that] the agreement is integrated, then parol evidence may be admitted only if the court makes a subsequent determination that the language of the agreement is ambiguous." *Id.* As with the initial inquiry into the question of integration, some cases have permitted the consideration of any relevant evidence in determining whether a contract is ambiguous. *See Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995); *Cantamar*, 2006 UT App 321 at ¶ 26, 142 P.3d 140; *Gillmor v. Macey*, 2005 UT App 351, ¶ 35, 121 P.3d 57 (rejecting "the strict application of the 'four corners' rule, which limits the boundaries of inquiry into whether an ambiguity exists in a contract to the contract's 'four corners' "). If the court then concludes, in light of all the credible relevant evidence, that the contract language is indeed ambiguous, parties may be allowed to introduce extrinsic evidence to resolve any ambiguities. *See Cantamar*, 2006 UT App 321 at ¶ 27, 142 P.3d 140. "Conversely, if after considering such evi-

dence, the court determines that the language of the contract is not ambiguous, then the parties' intentions must be determined solely from the language of the contract." *Id.* (quotations and citation omitted).

¶ 11 We distinguish the instant case from the *Ward* line of cases above. The proffered extrinsic evidence in those cases helped uncover ambiguities in the text of the agreements that may not have been obvious on their face. In our case, the proffered extrinsic evidence addresses only Plaintiff's subjective reasons for entering into the Lease and does not help uncover any ambiguity in the Lease itself. The language of the Lease is clear and not "capable of more than one reasonable interpretation because of uncertain terms, missing terms, or other facial deficiencies." *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991) (quotations and citation omitted). Because the Lease is unambiguous, the trial court improperly allowed Plaintiff's testimony to modify the terms of the Lease.

### III. Breach

¶ 12 At trial, the court admitted testimony and evidence concerning Defendant's possible breach of the Lease, specifically Defendant's duty to pay monthly rent to Plaintiff. The trial court expressly found that Defendant did not make the monthly cash payments he claimed to have made to Plaintiff during a period of several years. But the trial court has not made findings of fact and conclusions of law concerning the larger payments allegedly made by check. We therefore remand the case for further proceedings, consistent with this opinion, to determine whether Defendant in fact breached the unambiguous terms of the Lease.

### CONCLUSION

¶ 13 Plaintiff and Defendant entered into a valid, integrated, and unambiguous lease agreement. Though the trial court could consider extrinsic evidence to determine whether the Lease was in fact integrated, the trial court's implicit finding that the contract was not integrated was clearly erroneous. The presumption favoring a finding of integration is, in this case, strengthened by the presence of a clear and unambiguous integration clause in the Lease from which the trial court should have gleaned the parties' intent. Such an integration clause weighs heavily in favor of a finding that the agreement of which it is a part is integrated. Finally, the trial court did not make a sufficient determination of breach.

¶ 14 We therefore reverse and remand the case for further proceedings concerning Defendant's alleged breach of the Lease.

¶ 15 WE CONCUR: JUDITH M. BILLINGS, Judge and JAMES Z. DAVIS, Judge.