IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Iota, LLC, a Utah limited liability company; and California Benefit, Inc., a California corporation, | ) ) ) ) | OPINION<br><br>Case No. 20100855-CA |
| Plaintiffs and Appellees, | ) ) ) | |
| v. | ) ) | F I L E D<br>(August 2, 2012) |
| Davco Management Company, LC, a Utah limited liability company, | ) ) ) ) | 2012 UT App 218 |
| Defendant and Appellant. | ) | |

-----

Fifth District, St. George Department, 080502981
The Honorable James L. Shumate

Attorneys:     Darwin C. Fisher, St. George, for Appellant
                     Paul D. Veasy, David R. Hall, and Alan S. Mouritsen, Salt Lake City, for
                     Appellees

-----

Before Judges McHugh, Voros, and Davis.

DAVIS, Judge:

¶1     Davco Management Company, LC (Davco) appeals several of the trial court's rulings in favor of Iota, LLC and California Benefit, Inc. (collectively, Plaintiffs). We affirm in part, and reverse and remand in part.

# BACKGROUND

¶2    In 2005, Davco, through its member and manager, David Fisher, entered into a real estate purchase contract (REPC) with Iota for the purchase of Casa Sonoma and with California Benefit for the purchase of Casa Grande, both of which are apartment complexes located in St. George, Utah. That purchase was never finalized because Davco was unable to obtain financing. However, in 2006, the parties entered into new REPCs for the purchase of the properties using owner financing. Under the new REPCs, Davco executed a promissory note for each property (the promissory notes). The first was executed in favor of Iota in the amount of $1,341,395, with the entire balance due on or before December 1, 2007. The second was executed in favor of California Benefit in the amount of $2,411,596, with the entire balance due on or before December 10, 2007. Davco was to make monthly interest-only payments on the notes until they became due. To secure payment of the notes, Davco also executed a trust deed for each property in favor of each property's seller (the trust deeds), granting a security interest in the property, rents, and security deposits.

¶3    In connection with the purchase, Davco requested profit and loss statements for the apartment complexes (the financial information). In advance of closing, Plaintiffs provided Davco with financial information for January 2005 through May 2006. Davco contends that this information was inaccurate because the statements contained information for other properties as well. Davco also alleges that Plaintiffs never provided financial information for the remainder of 2006, although the trial court found that Plaintiffs provided that information in February 2007. Davco contends that Plaintiffs orally agreed to provide the financial information and that this information was necessary in order for it to obtain financing.

¶4    Although Fisher attempted to obtain lender financing in order to pay the balances on the promissory notes, his loan application was denied on February 21, 2008, because (1) he "did not have two years of income stream as the owner," (2) the appraised value of Casa Grande was lower than anticipated, and (3) he had credit problems arising from eleven previous foreclosures. As a result, Davco was unable to pay the balance of the promissory notes when they matured in December 2007. However, Davco continued to seek financing after the maturity dates, and Plaintiffs continued to assist it in that effort.

¶5      While the apartments were under Davco's ownership, Davco conveyed Casa Sonoma to Fisher's father (Father) without Iota's knowledge or consent. The apartments were ultimately conveyed back to Davco.[1] Additionally, Davco recorded a $500,000 trust deed encumbering Casa Sonoma in favor of Fab 5 Management LLC, also without the knowledge or consent of Iota.

¶6      On June 3, 2008, approximately six months past the maturity dates on the promissory notes, Plaintiffs requested that Davco obtain financing by the end of July 2008. When Davco still had not obtained financing by August 25, 2008, Plaintiffs requested that Davco deliver deeds in lieu of foreclosure. Davco refused the request and asked Plaintiffs for an extension until October 2. Plaintiffs agreed but requested that Davco increase its monthly payments by $1,000 per month for Casa Sonoma and $1,500 per month for Casa Grande as consideration for the extension. Davco rejected the request and stopped payment on the September interest checks to Plaintiffs, after which Davco made no additional payments. On September 9, 2008, Davco requested reimbursement for the cost of improvements made to the apartments while they were under Davco's ownership. On September 24, Davco repeated the request and further alleged that Plaintiffs had previously agreed to a one-year extension on the maturity dates of the promissory notes. Plaintiffs denied the allegation and ultimately proceeded with nonjudicial foreclosures of the properties, at which time they discovered the conveyance to Father and the $500,000 encumbrance.

¶7      Between the time that Davco stopped making monthly payments in September 2008 and the time of the trustee's sale in February 2009, Davco collected and retained rents and security deposits from the apartment tenants. On November 5, 2008, the trial court issued an Ex Parte Order requiring that Davco and Fisher deposit all rents collected with the court.[2] The Ex Parte Order was sent to Davco and Fisher's attorney, who neither filed an objection nor moved to have it set aside at that time. Davco and

---

[1]Conveying the apartments to Father was apparently part of an effort to obtain financing in Father's name.

[2]At the time the Ex Parte Order was issued, Fisher was a party to the proceedings. He was ultimately removed as a party in Plaintiffs' first amended complaint.

Fisher did not deposit any of the rent or security deposits with the trial court until August 7, 2009, at which point they deposited $33,805.33.

¶8    A trustee's sale was conducted on February 20, 2009.  Iota purchased Casa Sonoma with a credit bid of $934,000, and California Benefit purchased Casa Grande with a credit bid of $1,800,000.  Following the trustee's sale, Plaintiffs brought suit to obtain deficiency judgments against Davco and to recover the rents and security deposits collected by Davco between September 1, 2008, and February 20, 2009.  Davco disputed the claims, arguing breach of contract, breach of the implied covenant of good faith and fair dealing, equitable estoppel, and waiver.  Davco also claimed that it was entitled to recover against Plaintiffs for the cost of improvements made to the apartments.  Although no contempt allegation was raised in their complaint, Plaintiffs raised in the pretrial order and argued in their trial brief that both Davco and Fisher should be held in contempt for failing to comply with the Ex Parte Order.  Davco challenged the trial court's jurisdiction to conduct the contempt proceeding in conjunction with the trial due to the lack of an affidavit of the facts constituting contempt.  At trial, Davco also moved to have the Ex Parte Order stricken, asserting that the trial court failed to comply with rule 67 of the Utah Rules of Civil Procedure in issuing the order.  The trial court denied the motion.

¶9    Following a three-day trial, the trial court rejected all of Davco's defenses and ruled that Plaintiffs were entitled to deficiency judgments against Davco.  Davco was ordered to pay $389,438.30 to Iota and $272,266.20 to California Benefit, as well as Plaintiffs' attorney fees.  Furthermore, the trial court concluded that Davco's failure to remit the rent and security deposits to Plaintiffs was a violation of the terms of the trust deeds and awarded Plaintiffs $132,844.96 for that violation.  The trial court also ruled that Davco had violated the terms of the Iota trust deed by conveying Casa Sonoma to Father and by encumbering the property.  The trial court dismissed Davco's claim that it was entitled to a set-off for improvements made to the property.  The trial court also held Davco and Fisher in contempt for their failure to comply with the Ex Parte Order and awarded Plaintiffs $71,119.17, representing rent and security deposits, together with their attorney fees in connection with the contempt.[3]  Davco now appeals.

---

[3]The deficiency judgments were to be reduced by the amounts already deposited with the court and by any amounts paid under the judgment for violation of the terms of the trust deeds and the judgments for contempt.

## ISSUES AND STANDARDS OF REVIEW

¶10     On appeal, Davco argues that the trial court made a number of errors. First, Davco challenges several of the trial court's factual findings, claiming that the findings were unsupported by the evidence. We review a trial court's findings of fact for clear error. *See Houskeeper v. State*, 2008 UT 78, ¶ 18, 197 P.3d 636.

¶11     Second, Davco argues that the court incorrectly applied the statute of frauds and its part performance exception. This is a mixed question of law and fact. *See Spears v. Warr*, 2002 UT 24, ¶ 23, 44 P.3d 742, *overruled on other grounds by Tangren Family Trust ex rel. Tangren v. Tangren*, 2008 UT 20, ¶ 16 & n.20, 182 P.3d 326. Thus, we review the trial court's determinations regarding the applicability of the statute of frauds for correctness and its underlying factual determinations for clear error. *See id.*

¶12     Third, Davco argues that the trial court should have ruled that Plaintiffs' claims were barred by equitable estoppel. "The issue of whether equitable estoppel has been proven is a classic mixed question of fact and law." *Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997). Because the equitable estoppel inquiry is highly fact-sensitive, "we properly grant the trial court's decision a fair degree of deference when we review the mixed question of whether the requirements of the law of estoppel have been satisfied in any given factual situation." *Id.*

¶13     Fourth, Davco contests the trial court's conclusion that Plaintiffs did not waive their right to enforce the terms of the promissory notes. "[W]e . . . grant very broad discretion to the trial court's application of legal propositions to the facts in waiver cases." *Living Scriptures, Inc. v. Kudlik*, 890 P.2d 7, 10 (Utah Ct. App. 1995).

¶14     Fifth, Davco contests the trial court's finding that Plaintiffs did not breach the implied covenant of good faith and fair dealing. "[W]hether there has been a breach of good faith and fair dealing is a factual issue," *Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 61 (Utah Ct. App. 1996), and "[w]e review questions of fact under the clearly erroneous standard," *Tangren Family Trust ex rel. Tangren v. Tangren*, 2006 UT App 515, ¶ 6, 154 P.3d 180, *aff'd*, 2008 UT 20, 182 P.3d 326.

¶15     Sixth, Davco contends that the trial court lacked jurisdiction to hold Davco and Fisher in contempt. "We review legal conclusions concerning the existence of

jurisdiction for correctness and afford no deference to the district court." *State v. Mullins*, 2005 UT 43, ¶ 6, 116 P.3d 374.

¶16 Seventh, Davco argues that the Ex Parte Order was invalid because the trial court did not comply with rule 67 of the Utah Rules of Civil Procedure. "We review the interpretation and application of a rule of procedure for correctness." *Edwards v. Powder Mountain Water & Sewer*, 2009 UT App 185, ¶ 14, 214 P.3d 120. Nevertheless, where the outcome of the proceedings is not affected by an alleged error, it will be considered harmless. *See Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553.

¶17 Finally, Davco argues that the trial court erred in concluding that it had breached the terms of the Iota trust deed by conveying Casa Sonoma to Father and by recording the $500,000 encumbrance. Because this argument was not preserved for appeal, Davco argues plain error. In order to demonstrate plain error, Davco must establish "that there was error below, that the error should have been obvious to the district court, and that the error was prejudicial." *State v. Diaz-Arevalo*, 2008 UT App 219, ¶ 13, 189 P.3d 85.


ANALYSIS

I. Factual Findings

¶18 Davco challenges three of the trial court's factual findings: (1) that there was no oral contract to extend the maturity dates of the promissory notes, (2) that Plaintiffs provided the financial information to Davco, and (3) that the financial information was not necessary in order for Davco to refinance. We conclude that all of these findings are either supported or constitute harmless error.

¶19 Although both parties present arguments regarding the sufficiency of the evidence to support the trial court's finding that no oral contract existed, it does not appear to us that the trial court ever made such a finding. The findings merely state that Fisher alleged that Plaintiffs had agreed to a one-year extension and that Richard T. Murset, managing member of both Iota and California Benefit, denied that such an agreement existed. Because any such oral agreement would be unenforceable under the statute of frauds, and because we ultimately conclude that the part performance

exception to the statute of frauds does not apply in this case for reasons independent of the oral contract's existence, *see infra* ¶¶ 24-25, we conclude that the trial court's failure to make a specific finding as to the existence of the oral contract was harmless.

¶20    Davco next alleges that the trial court's finding that Plaintiffs provided Davco with the financial information was clearly erroneous because the evidence was insufficient to demonstrate that the financial information for June through December of 2006 was ever provided.  Murset's testimony that he provided the remainder of the 2006 information in February 2007 was sufficient to support the trial court's finding to that effect.  Davco makes a number of arguments concerning the lack of documentation and inconsistencies between Murset's deposition and his testimony at trial.  However, the trial court was free to accept Murset's testimony even in the absence of supporting documentation and in the face of alleged inconsistencies, *see Henshaw v. Henshaw*, 2012 UT App 56, ¶¶ 11-12, 271 P.3d 837 (explaining that "[i]t is within the province of the trial court, as the finder of fact, to resolve issues of credibility" and that a lack of documentary evidence supporting a witness's testimony or contradictory testimony from other witnesses does not preclude the trial court from accepting the witness's testimony as true), especially given that those inconsistencies appear to be attributable mainly to confusion about what was being asked.

¶21    Davco also alleges that it could not use the information provided to obtain refinancing because it included information regarding other rentals managed by Plaintiffs and the manner in which the numbers were presented made it impossible to determine what portion of the numbers actually reflected the profits and losses of Casa Grande and Casa Sonoma.  However, even if we were to accept Davco's assertion that the financial information was detrimentally over-inclusive and that this fact rendered the trial court's finding erroneous, any error in the finding was harmless in light of the trial court's additional finding that the financial information was not needed to obtain refinancing.

¶22    The trial court's finding that the financial information was unnecessary was supported by the evidence and therefore not clearly erroneous.  Davco asserts that the evidence on which the trial court relied—the testimony of the mortgage broker that Davco needed two years of financial information under its ownership and that the 2005 and 2006 financial information could not assist the refinance—was stricken by the trial court on hearsay grounds.  However, the trial court struck only the mortgage broker's

testimony regarding statements made to him by a commercial lender. The mortgage broker's testimony regarding the reasons the loan application was denied was not hearsay. The mortgage broker testified that one of the reasons for the denial was Fisher's failure to meet seasoning requirements, which he explained required a two-year financial history from the *current* owner of the property. The mortgage broker also testified that in processing Davco's application, he never requested that Fisher provide him with the financial information for 2005 and 2006. This non-hearsay evidence was sufficient to support the trial court's finding that the financial information was not necessary to obtain financing.

## II. Statute of Frauds

¶23 The trial court ruled that Davco's defense that it had orally agreed with Plaintiffs to a one-year extension on the maturity dates of the promissory notes was barred by the statute of frauds. Davco does not dispute that the alleged modification is subject to the statute of frauds. *See generally Fisher v. Fisher*, 907 P.2d 1172, 1176 (Utah Ct. App. 1995) ("[W]hen a contract is required to be in writing, the same requirement applies with equal force to any alteration or modification thereof." (alteration in original) (internal quotation marks omitted)). Rather, Davco asserts that the modification is subject to the part performance exception to the statute of frauds. "[W]here there is evidence of part performance under the modified agreement, and where it would be inequitable to permit a party to repudiate the oral modification and seek enforcement of the written contract, the oral agreement may be removed from the statute of frauds and enforced." *Id.* at 1177. In order for an oral contract to come under the part performance exception to the statute of frauds, the following conditions must exist:

> First, the oral contract and its terms must be clear and definite; second, the acts done in performance of the contract must be equally clear and definite; and third, the acts must be in reliance on the contract. Such acts in reliance must be such that a) they would not have been performed had the contract not existed, and b) the failure to perform on the part of the promisor would result in fraud on the performer who relied, since damages would be inadequate.

*Martin v. Scholl*, 678 P.2d 274, 275 (Utah 1983) (internal quotation marks omitted).

¶24     Because we conclude that the reliance prong of the test is not satisfied here, we agree with the trial court that Davco's breach of contract defense is barred by the statute of frauds.  The requirements of this prong are most stringent where the existence of the oral contract is uncertain, that is, where neither independent acts nor an admission of the contract affirmatively demonstrate that an oral contract existed.  *See id.* at 277-78.  Such is the case here.  Plaintiffs vigorously deny the existence of an oral contract to extend the maturity dates, and the only evidence of the contract presented by Davco is Fisher's assertion and the testimony of the real estate agent that he "vaguely" remembered Murset telling him that Plaintiffs had given Davco "another year" to refinance.  The disputed evidence in this case required the trial court to make a credibility judgment on the question of whether an oral contract existed, and thus, the acts in reliance must have been "exclusively referable to the contract,"[4] *see id.* at 277 (internal quotation marks omitted), in order for the oral contract to be enforceable on grounds of part performance.  *See id.* at 274, 280 (holding that a ranch foreman's actions of working long hours, declining more lucrative employment, and performing personal services for the employer were not exclusively referable to an alleged promise by the employer to convey 120 acres of land to the foreman in return for his continued employment, particularly given that the existence of the oral contract was vigorously disputed).  In other words, Davco's performance in reliance on the alleged oral contract "must be reasonably explicable only on the postulate that a contract exists."  *See id.* at 277 (internal quotation marks omitted).

¶25     Davco's actions here are not such that they can only be explained by an agreement with Plaintiffs to extend the maturity dates by a year.  Its actions can just as easily be explained by Plaintiffs' leniency in enforcing the maturity dates and cooperation with Davco's continued efforts to obtain financing after the maturity dates had passed.  If Davco hoped to ultimately obtain refinancing and Plaintiffs had indicated a willingness to cooperate with the financing after the maturity dates, it is to be expected that Davco would continue to manage the apartments and make payments on the promissory notes until it could pay the balance due to Plaintiffs; Davco could not have expected Plaintiffs to continue to indulge Davco's delay in paying the balance if

---

[4]While it does not appear that the trial court ever made a specific finding as to whether an oral agreement was made, *see supra* ¶ 19, the trial court's failure to make a finding on this issue was harmless because any part performance on the part of Davco was not exclusively referable to the alleged oral contract, *see infra* ¶ 25.

Davco was not at least making the agreed-upon monthly payments.[5] Thus, Davco's actions indicate merely an ongoing cooperation between the parties and are not exclusively referable to the alleged oral contract to extend the maturity dates for a particular period of time.[6]

## III.  Equitable Estoppel

¶26    Davco next contends that the trial court should have concluded that Plaintiffs' claims were barred by equitable estoppel.  This claim is based on Davco's assertion that Plaintiffs failed to fulfill their promises to provide Davco with accurate financial information and to extend the maturity dates on the promissory notes by one year.

¶27    In order to establish equitable estoppel, a party must prove

> (1) a statement, admission, act, or failure to act by one party
> inconsistent with a claim later asserted; (2) reasonable action
> or inaction by the other party taken on the basis of the first

---

[5]Davco also asserts that it spent approximately $128,376 on remodeling costs in reliance on the agreement to extend the maturity dates.  However, Fisher testified at trial that the improvements were made during 2006 and 2007.  Since the oral agreement is not alleged to have been entered into until at least December 2007, when the maturity dates were reached, the fact that Davco undertook the improvements does not indicate any reliance on an oral agreement to delay the maturity dates.  And even if some improvements continued after the maturity dates, we cannot say that such improvements would be exclusively referable to an oral agreement.

[6]Although the parties also argue the applicability of the statute of frauds to Plaintiffs' alleged agreement to provide the financial information, the trial court did not explicitly rule on that question.  Rather, the trial court implicitly rejected it by finding that the financial information was not needed for the refinance—in other words, any breach of an alleged promise to provide the financial information would be immaterial because the financial information could not have helped Davco obtain refinancing.  Because the financial information was not needed for the refinance, Davco cannot demonstrate that its acts were in any way reliant on the alleged promise to provide the financial information.

> party's statement, admission, act, or failure to act; and (3)
> injury to the second party that would result from allowing
> the first party to contradict or repudiate such statement,
> admission, act, or failure to act.

*Whitaker v. Utah State Ret. Bd.*, 2008 UT App 282, ¶ 22, 191 P.3d 814 (internal quotation marks omitted). Davco cannot establish the third prong of the test—that it was injured by Plaintiffs' alleged failure to provide accurate financial information and to extend the maturity dates.

¶28     First, the trial court's finding that the financial information was not needed to obtain financing forecloses the possibility that the failure to provide the information injured Davco. But even if we were to agree with Davco that the evidence was insufficient to support this finding, Davco has pointed us to no evidence that would support the opposite conclusion, i.e., that the financial information was necessary to obtain refinancing and that Plaintiffs' failure to provide it caused Davco's failure to refinance. At best, Davco's arguments might demonstrate that the effect of not providing the financial information to the mortgage broker was unknown.

¶29     Similarly, Davco failed to establish that it would have been able to refinance if the maturity dates had been extended to December 2008 in accordance with Plaintiffs' other alleged promise, given that its original application was rejected not only for Davco's failure to meet seasoning requirements but also due to the low appraisal and Fisher's bad credit. The most Davco can show is that the mortgage broker stated in his deposition that he did not know whether the loan would have been approved if the seasoning requirement had been met, a statement the broker repudiated at trial. In fact, despite the fact that the trustee's sale did not occur until February 2009, two months past the time Davco claims it should have been permitted to refinance, Davco never did manage to obtain refinancing. *See generally* Utah Code Ann. § 57-1-31 (2010) (outlining the procedure for curing a default under a trust deed).

¶30     While the trial court did not make any explicit conclusions regarding equitable estoppel, its ruling in favor of Plaintiffs implicitly and justifiably rejects this defense. Because we conclude that Davco failed to meet its burden in establishing its equitable estoppel claim, *see generally State v. Hamilton*, 2003 UT 22, ¶ 35, 70 P.3d 111 (explaining

that "estoppel is an affirmative defense" and its proponent has "the burden of proving reliance"), we affirm the trial court's implicit ruling.

## IV. Waiver

¶31 Next, Davco asserts that Plaintiffs waived their right to declare a default when the maturity dates passed without payment because they agreed to a one-year extension on the maturity dates of the promissory notes. Because we have determined that any such agreement was unenforceable due to its failure to comply with the statute of frauds, Davco's waiver argument fails.

## V. Covenant of Good Faith and Fair Dealing

¶32 Davco asserts that Plaintiffs breached the implied covenant of good faith and fair dealing because their failure to either provide the financial information or delay the maturity dates long enough for Davco to establish a two-year history of ownership prevented Davco from refinancing. "Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998) (internal quotation marks omitted). "[O]ne party may not render it difficult or impossible for the other to continue performance and then take advantage of the non-performance he has caused." *Zion's Props., Inc. v. Holt*, 538 P.2d 1319, 1321 (Utah 1975). That is not what occurred here.

¶33 As to Plaintiffs' alleged failure to provide the financial information, the trial court determined that the information was not needed for refinancing, so the failure to provide it could not have been a breach of the covenant of good faith and fair dealing. Moreover, Plaintiffs' refusal to give Davco an additional year to refinance so it could establish two years of ownership could not have been a breach of good faith and fair dealing because Plaintiffs were not required to surrender their rights under the promissory notes in order to assist Davco in refinancing. Declining to give up rights granted by a contract does not constitute a breach of the covenant of good faith and fair dealing, *cf. Cook Assocs., Inc. v. Utah Sch. & Institutional Trust Lands Admin.*, 2010 UT App 284, ¶ 16, 243 P.3d 888, and the alleged promise to do so in this case is unenforceable under the statute of frauds. Furthermore, it does not appear that Davco would have ultimately benefitted from an extension because the trial court found that there were

factors apart from the seasoning issue that prevented Davco from refinancing and because Davco never did refinance, despite accruing two years of ownership prior to the trustee's sale. Thus, Plaintiffs' actions were unlikely to have injured Davco's ability to receive the fruits of its contract.

## VI. Contempt

¶34 Davco next challenges the trial court's finding of contempt against Davco and Fisher, asserting that Davco and Fisher were not provided with proper notice of the contempt allegation and that the trial court therefore lacked jurisdiction to hold either of them in contempt.[7] Utah Code section 78B-6-302(2) provides, "When [a] contempt is not committed in the immediate view and presence of the court or judge, an affidavit or statement of the facts by a judicial officer shall be presented to the court or judge of the facts constituting the contempt." Utah Code Ann. § 78B-6-302(2) (2008). In this case, no affidavit was ever filed. The contempt issue makes its first appearance in the December 18, 2009 pretrial order, which states that Plaintiffs were "seek[ing] judgment against David Fisher individually, specifically requesting that he be held in contempt of court for his willful violation of the Order and that judgment be entered against him for the rents and security deposits taken by him." The pretrial order says nothing regarding a contempt allegation against Davco. Plaintiffs' trial brief then proceeds to present facts and argument in support of Plaintiffs' contempt allegations against both Davco and Fisher. However, neither the pretrial order nor the trial brief contains an appropriate affidavit.[8]

---

[7]Davco also contends that the notice it received did not comply with due process requirements, but because we reverse the contempt order on jurisdictional grounds, we need not reach this question.

[8]Plaintiffs assert that deposition testimony by Fisher, which was quoted in their trial brief, was the equivalent of an affidavit. While it is possible that a sworn admission by the alleged contemnor could meet the statute's affidavit requirement, *cf. Crank v. Utah Judicial Council*, 2001 UT 8, ¶ 28 n.11, 20 P.3d 307 (noting the possibility that a verified pleading might be considered equivalent to an affidavit in the context of a contempt proceeding), we do not think the requirement was met under the circumstances of this case, where the Plaintiffs merely quoted a few lines of Fisher's

(continued...)

¶35    Plaintiffs assert that the arguments in their pleadings satisfied due process because they provided "adequate and timely notice of the charges made against the alleged contemnor" by "set[ting] forth the acts done or omitted that form the factual basis for the contempt charge," *see Khan v. Khan*, 921 P.2d 466, 468-69 (Utah Ct. App. 1996) (internal quotation marks omitted), just as an affidavit would have done.  But the statutory affidavit requirement is not concerned only with due process; it is jurisdictional.  *See Robinson v. City Court ex rel. City of Ogden*, 112 Utah 36, 185 P.2d 256, 258 (1947).  Thus, even assuming that the discussion in the pretrial order and the trial brief complies with due process, it is not sufficient under the statute to confer jurisdiction on the trial court in the absence of an affidavit.  *Cf. Jones v. Cox*, 84 Utah 568, 37 P.2d 777, 778 (1934) (reversing a trial court's contempt ruling on jurisdictional grounds where the trial court had issued an order to show cause but no initiating affidavit was ever filed).  Thus, the trial court's contempt ruling cannot stand.[9]

---

[8](...continued)
deposition in their trial brief.  Plaintiffs further asserted at oral argument that "the attorneys' making the motions before the court" regarding contempt was the equivalent of "a statement of facts by a judicial officer."  The term "judicial officer" is not explicitly defined for purposes of section 78B-6-302.  However, as that term is used in other provisions of the Utah Code relating to contempt, it is apparent that it refers to judges and not attorneys. *See* Utah Code Ann. § 78B-6-301(12) (2008) (listing "[d]isobedience of the lawful orders or process of a judicial officer" as an action constituting contempt); *id.* § 78A-2-218 (providing that "[e]very judicial officer has power" to enforce order in court proceedings, compel obedience to court orders, compel attendance of individuals in court, administer oaths in court proceedings, and punish for contempt).  We therefore determine that the appropriate definition of a judicial officer in the context of section 78B-6-302 is "any justice or judge of a court of record or any county court judge," *see* Utah Code Ann. § 20A-1-102(36) (Supp. 2011) (defining "judicial officer" for purposes of the election code).  Thus, a written pleading submitted by an attorney does not constitute "a statement of the facts by a judicial officer."

[9]Davco also appears to contend that the trial court did not have personal jurisdiction over Fisher to hold him in contempt.  As a matter of clarification, we reiterate that

a trial court has the power to hold non-parties in contempt if

(continued...)

## VII.  Rule 67

### A.  Harmless Error

¶36     Davco also argues that the trial court erred in issuing the Ex Parte Order without complying with the terms of rule 67 of the Utah Rules of Civil Procedure, which permits such an order only "[w]hen it is admitted by the pleadings, or shown upon the examination of a party, that he has in his possession or under his control any money . . . which belongs or is due to another party."  Utah R. Civ. P. 67.  Davco asserts that if the trial court did indeed fail to comply with rule 67 in issuing the Ex Parte Order, then Davco and Fisher cannot be found in contempt for violating it.  Because we determine that the trial court never acquired jurisdiction over the contempt issue, we have relieved Davco and Fisher of the only harm they claim as a result of the issuance of the allegedly unlawful Ex Parte Order and any error in issuing that order was harmless.

### B.  Collateral Bar Doctrine

¶37     Judge Voros's concurring opinion, in which Judge McHugh joins, electing not to address the merits of Davco's rule 67 argument in light of our determination that any error on the part of the trial court in failing to comply with rule 67 was harmless, constitutes the majority opinion on this matter.  Nevertheless, because I anticipate that the contempt issue may again arise on remand in the event Plaintiffs elect to pursue the contempt matter, I would have us address the merits of the rule 67 argument as guidance for the trial court.  *See generally State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867

---

[9](...continued)
> those parties conspire to frustrate a lawful order of the court.
> Specifically, a person may be held in contempt for
> "[d]isobedience of any lawful judgment, order or process of
> the court," or "[a]ny other unlawful interference with the
> process or proceedings of a court."

*Crank*, 2001 UT 8, ¶ 25 (alterations in original) (citations omitted) (quoting Utah Code Ann. § 78-32-1(5), (9) (1996) (current version at Utah Code Ann. § 78B-6-301(5), (9) (2008))).  Furthermore, we note that at the time Fisher was initially subjected to the Ex Parte Order, he was a party to the proceedings.  *See infra* note 12.

(explaining that appellate courts have discretion to address issues that are likely to arise on remand in order to provide guidance to the trial court).

¶38      As far as I can tell from the record and the briefs, Davco did not raise its challenge to the validity of the Ex Parte Order until the time of trial, almost eighteen months after the Ex Parte Order was issued and after the order had already been violated.  Rather than challenge the order, Davco and Fisher simply elected to ignore it.  "The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."  *Maness v. Meyers*, 419 U.S. 449, 459 (1975) (internal quotation marks omitted).

> Under the collateral bar doctrine, a party may not challenge a district court's order by violating it.  Instead, he must move to vacate or modify the order, or seek relief in [the appellate courts].  If he fails to do either, ignores the order, and is held in contempt, he may not challenge the order unless it was transparently invalid or exceeded the district court's jurisdiction.[10]

*United States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995); *see also Maness*, 419 U.S. at 458 ("Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947) ("Violations of an order are punishable as criminal contempt even though the order is set aside on appeal . . . ."); 17 C.J.S. *Contempt* § 24 (2011) (outlining the collateral bar doctrine) *cf. State v. Clark*, 2005 UT 75, ¶¶ 35-36, 124 P.3d 235 (stating that "[t]he proper method for contesting an adverse ruling is to appeal it, not to violate it" and that "an attorney who violates court orders and breaks ethical rules . . . cannot claim immunity from contempt proceedings"

---

[10]A third exception, excusing noncompliance with an order later found invalid where complying with the challenged order "could cause irreparable injury" such that "[s]ubsequent appellate vindication does not necessarily have its ordinary consequence of totally repairing the error," *Maness v. Meyers*, 419 U.S. 449, 460 (1975), is inapplicable under the facts of this case because Fisher and Davco would have suffered no "irreparable injury" by complying with the Ex Parte Order and depositing the funds with the court.

and "may not protest adverse rulings by violating them in the name of zealous advocacy"). "Even to invoke the 'transparently invalid' 'exception,' however, a defendant must make some good faith effort to seek emergency relief from the appellate court." *Cutler*, 58 F.3d at 832 (additional internal quotation marks omitted). Davco made no such effort.[11] *Cf. id.* at 832-33 (rejecting a defendant's argument that an order was transparently invalid where the defendant "made no effort whatever to vacate or modify the order, or seek relief in [the appellate court]"). And Davco has not alleged that the trial court lacked jurisdiction to issue the Ex Parte Order, only that it was not supported by the appropriate admissions by Davco and Fisher.[12] *See generally* Utah R. Civ. P. 67. Thus, I would hold that Davco and Fisher cannot avoid a contempt charge on the basis that the Ex Parte Order they violated was invalid when they made no good faith effort to object to the order prior to violating it.

## VIII. Davco's Breaches

¶39 Finally, Davco argues that the trial court plainly erred in concluding that Davco had breached the Iota trust deed by recording deeds to Father and by encumbering the property. Davco asserts that these conclusions are relevant to Plaintiffs' affirmative defense that any breach resulting from the failure to provide the financial information was excused by Davco's previous breaches. However, because we have concluded that Plaintiffs were not obligated to provide the financial information, any error in the trial court's conclusions regarding Davco's breaches could not have been prejudicial. *See generally State v. Diaz-Arevalo*, 2008 UT App 219, ¶ 13, 189 P.3d 85 (explaining that a party challenging a ruling on grounds of plain error must establish "that there was error below, that the error should have been obvious to the district court, *and that the error was prejudicial*" (emphasis added)).

---

[11]In fact, even when responding to Plaintiffs' contempt allegation in its trial brief, Davco did not raise the issue of the Ex Parte Order's validity. That argument appears to have been raised for the first time during trial.

[12]To the extent that Davco's argument may be construed as asserting that the trial court lacked personal jurisdiction over Fisher, that argument is based solely on Davco's contention that Fisher was not a party to the action. However, Fisher was a party at the time the Ex Parte Order was issued on November 4, 2008, and was not removed as a party until Plaintiffs filed their first amended complaint on November 14, 2008.

CONCLUSION

¶40     Because we conclude that the trial court correctly rejected Davco's part performance, equitable estoppel, waiver, and good faith and fair dealing claims, we affirm the trial court's deficiency judgment in favor of Plaintiffs. We also reject Davco's plain error challenge to the trial court's findings that Davco breached the Iota trust deed because Davco has failed to demonstrate prejudice.[13] Nevertheless, we reverse the trial court's contempt rulings against Davco and Fisher for lack of jurisdiction and remand to the trial court for additional proceedings, on the contempt matter only, consistent with this opinion. And because we reverse the contempt rulings on jurisdictional grounds, we determine that any error relating to the trial court's Ex Parte Order was harmless.

¶41     Affirmed in part, and reversed and remanded in part.


_____
James Z. Davis, Judge


-----


VOROS, Associate Presiding Judge (concurring in part and writing for the majority in part):

¶42     I fully concur in Judge Davis's opinion, except as to Part VII.B. That section of the opinion offers guidance on an issue that Judge Davis anticipates may arise on remand. I would decline to give such guidance in this case for reasons stated below.

_____

        [13]Because Plaintiffs were awarded fees in the trial court in connection with their non-contempt claims and have prevailed on those claims on appeal, they are entitled to an award of their attorney fees and costs on appeal with respect to those claims, to be assessed by the trial court on remand. *See Meadowbrook, LLC v. Flower*, 959 P.2d 115, 120 (Utah 1998).

And because Judge McHugh concurs with my opinion on this issue, the following opinion represents the judgment of the court on this one limited point.

¶43  This court unanimously rejects Davco's challenge to the trial court's denial of its motion to set aside the Ex Parte Order on the ground that any possible error was harmless.  This holding disposes of the claim of error on appeal.  However, Judge Davis would in addition hold that Davco and Fisher forfeited their right to challenge the contempt citation on the ground that the Ex Parte Order was not a lawful order of the court.  While we recognize that we have discretion to address issues fully briefed on appeal that will likely arise on remand, *see State v. Low,* 2008 UT 58, ¶ 61, 192 P.3d 867 (citing *State v. James*, 819 P.2d 781, 795 (Utah 1991)), we decline to do so here for several reasons.

¶44  First, we are not persuaded that the question is likely to arise on remand.  Judge Davis anticipates "that the contempt issue may again arise on remand in the event Plaintiffs elect to pursue the contempt matter."  Of course, none of us can foretell the future.  But the fact that an issue *might* arise on remand *if* Plaintiffs elect to pursue the matter falls short of the "likely to arise" standard.

¶45  Second, the question treated in Part VII.B was not briefed by the parties on appeal.  Judge Davis cites *State v. Low*, which in turn cites *State v. James*, and *James* limits the principle of giving guidance on remand to issues "fully briefed" on appeal:

> [T]here are other issues presented on appeal that will likely arise during retrial.  We therefore exercise our discretion to address those issues for purposes of providing guidance on remand.  *See State v. James*, 819 P.2d 781, 795 (Utah 1991) ("Issues that are fully briefed on appeal and are likely to be presented on remand should be addressed by this court.").

*Low*, 2008 UT 58, ¶ 61; *see also* Utah R. App. P. 30(a) ("If a new trial is granted, the court may pass upon and determine all questions of law involved in the case *presented upon the appeal* and necessary to the final determination of the case." (emphasis added)).  Neither party here briefed the question of whether one who disobeys a court order forfeits the right to challenge its lawfulness in a later contempt hearing.  We are thus disinclined to resolve the issue "without the engaged participation of the parties whose

affairs will be directly affected" by that resolution. *See State v. Robison*, 2006 UT 65, ¶ 16, 147 P.3d 448 (referring to reversing on an unbriefed issue).

¶46    Finally, the question treated in Part VII.B is one of first impression in Utah. Davco contends that it disobeyed an *unlawful* order of the court. Our contempt statute defines contempt of court to include "disobedience of any *lawful . . .* order *. . .* of the court." Utah Code Ann. § 78B-6-301 (2008) (emphasis added). We are aware of no Utah decision addressing what *lawful* means as used in this statute. The Utah case cited by our colleague holds that a lawyer's ethical duty of zealous advocacy does not insulate his actions from contempt proceedings. *See State v. Clark*, 2005 UT 75, ¶¶ 33–36, 124 P.3d 235. But in that case, the lawyer "knowingly violated a *lawful* court order." *Id.* ¶ 39 (emphasis added). The lawfulness of the Ex Parte Order here has not been resolved.

¶47    In sum, the question of law Judge Davis treats in Part VII.B is not necessary to the resolution of this appeal, was not briefed by the parties, involves a novel question of statutory interpretation, and may well not arise on remand. Consequently, we express no opinion on it.

_____
J. Frederic Voros Jr.,
Associate Presiding Judge


-----


¶48    I CONCUR:


_____
Carolyn B. McHugh,
Presiding Judge