**2019 UT App 31**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
WATSON PHARMACEUTICALS INC., WATSON LABORATORIES INC.,
AND WATSON PHARMA INC.,
Appellees.

Opinion
No. 20170545-CA
Filed February 28, 2019

Third District Court, Salt Lake Department
The Honorable Matthew Bates
The Honorable Kate A. Toomey
No. 070913719

Sean D. Reyes, Robert E. Steed, W. Daniel Miles III,
Alison D. Hawthorne, Joseph W. Steele, and Kenneth
D. Lougee, Attorneys for Appellant

Richard A. Vazquez, James W. Matthews, and Katy
E. Koski, Attorneys for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1     After observing a trend of allegedly fraudulent pharmaceutical prices being submitted to the State Medicaid program, the State of Utah brought civil actions against a number of pharmaceutical companies for fraud and alleged violations of the Utah False Claims Act (the UFCA). Utah Code Ann. §§ 26-20-1 to -15 (LexisNexis 2013). Watson Pharmaceuticals Inc. and two of its subsidiaries, Watson

Laboratories Inc. and Watson Pharma Inc. (collectively, the Watson Defendants), were among the named defendants.[1] The district court dismissed the claims against the Watson Defendants because the State failed to plead its claims against each defendant separately and instead identified them collectively in the complaint as "Defendant Watson." We affirm.

BACKGROUND[2]

¶2 Under Utah's Medicaid program, medical providers are reimbursed for drugs prescribed to Medicaid recipients. Reimbursement is set by state and federal rules, and the amount a medical provider receives is calculated by looking at, among other things, the Average Wholesale Price (AWP) reported by drug wholesalers or manufacturers. The Watson Defendants each allegedly reported inflated AWPs, resulting in the State over-reimbursing physicians and pharmacists for drugs prescribed for and dispensed to Utah Medicaid recipients. The over-reimbursement in turn allowed the Watson Defendants to market the "spread" between their inflated AWPs and the actual AWPs, thereby increasing sales by inducing doctors to buy their drugs.

---

1. Two of the Watson Defendants have since changed their names—Watson Pharma Inc. is now known as Actavis Pharma Inc. and Watson Pharmaceuticals Inc. is now known as Allergan Finance LLC. We refer to them as they were named below.

2. "On appeal from a motion to dismiss, we must accept the factual allegations in the complaint as true and view all reasonable inferences from them in the light most favorable to the plaintiff." *Pang v. International Document Services*, 2015 UT 63, ¶ 3, 356 P.3d 1190 (footnote omitted). We recite the facts accordingly.

¶3 The State found a widespread practice of inflated AWP reporting and brought civil actions against numerous pharmaceutical companies. In three separate actions against three different groups of defendants, the State alleged violations of the UFCA and claims for fraudulent misrepresentation. While each case followed a different procedural path, the complaints were virtually identical.

¶4 One of these companion cases found its way to the Utah Supreme Court, and the current case was stayed during the pendency of that appeal. *See generally State v. Apotex Corp.*, 2012 UT 36, 282 P.3d 66. In *Apotex*, the district court had dismissed the State's complaint with prejudice for failing to plead its claims with particularity under rule 9(c) of the Utah Rules of Civil Procedure.[3] *Id.* ¶ 11; *see also* Utah R. Civ. P. 9(c) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ."). The district court concluded that the State had "failed to identify each defendant's allegedly fraudulent misrepresentations and UFCA violations with particularity" and instead "offered only broad conjecture of alleged false or fraudulent statements that the Defendants made as a group." *Apotex*, 2012 UT 36, ¶ 12 (quotation simplified).

¶5 On appeal, the supreme court held that, while rule 9(c) applied to the State's UFCA and fraudulent misrepresentation claims, "a relaxed standard is appropriate where a plaintiff asserts a widespread fraudulent scheme that involves the submission of many false claims over a lengthy period." *Id.* ¶ 20. This relaxed standard provides that "if a plaintiff cannot allege

---

3. Rule 9 of the Utah Rules of Civil Procedure was amended in 2016 and "language previously appearing under rule 9(b) now appears under rule 9(c)." *Armer Tex. Trust v. Brazell*, 2017 UT App 35, ¶ 1 n.2, 397 P.3d 604. The parties' briefing and the supreme court's opinion in *State v. Apotex Corp.*, 2012 UT 36, 282 P.3d 66, refer to rule 9(b), but, for the convenience of the reader, we refer to rule 9(c) throughout this opinion.

the details of an actually submitted false claim, the plaintiff may nevertheless survive [rule 9(c)] by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted by each defendant." *Id.* ¶ 29 (quotation simplified). "[I]n the interest of justice," the court remanded the case to the district court to allow the State an opportunity to meet the new standard. *Id.* ¶¶ 31, 39.

¶6     The State here was similarly given the opportunity to replead its claims to satisfy *Apotex*. In its Third Amended Complaint (the Complaint),[4] the State alleged that the defendants had each "made false publications" for the prescription drugs identified in Exhibit A to the Complaint. In that exhibit, the State identified hundreds of drugs, listing each by product name and National Drug Code (NDC). The State also identified the specific defendant associated with each drug, except for the drugs associated with the Watson Defendants. For those drugs, the State alleged that the Watson Defendants collectively "made false publications" for the drugs identified in Exhibit A as being jointly associated with the three entities.

¶7     The State also embedded in the Complaint charts purporting to show "representative examples" of alleged false claims. *See id.* ¶ 35 (listing "representative examples" of alleged false claims as an example of "reliable indicia that lead to a strong inference that false claims were actually submitted" (quotations simplified)). For each prescription drug listed in the charts, the State identified the drug by name and NDC, along with each drug's reported AWP, actual AWP, and the spread

---

4. The State had twice amended its complaint before *Apotex* was decided: once as a matter of course pursuant to rule 15(a) of the Utah Rules of Civil Procedure, and once by order of the court pursuant to the defendants' stipulation. After *Apotex*, the court granted the State permission to file its third amendment after receiving no opposition from the defendants.

between the two. Again, the State provided separate charts for each defendant except for the Watson Defendants. The representative examples for the three Watson Defendants were combined without distinction in a single chart under the name "Defendant Watson."

¶8  Under rules 9(c) and 12(b)(6) of the Utah Rules of Civil Procedure, all of the named defendants, including the Watson Defendants, filed a joint motion to dismiss the Complaint, alleging that the State failed to satisfy the *Apotex* pleading standard. The district court ruled that the State pleaded its facts with sufficient particularity except as to the Watson Defendants, which the court recognized "is not a single defendant, but instead, is comprised of three distinct entities." The court noted that the State was "not required to identify the minutia related to each alleged bad act," but that *Apotex* required that each defendant must be "individually identified." It therefore dismissed the Complaint against the Watson Defendants with prejudice[5] but allowed the case to proceed against the other defendants.

¶9  Three months later, the State sought leave under rule 15(a) of the Utah Rules of Civil Procedure to again amend its complaint. Among other things, the State sought to cure the defect of grouping the three Watson Defendants together by providing separate representative examples of fraudulent

---

5. The district court did not expressly state whether it dismissed the claims against the Watson Defendants with or without prejudice, and the issue of whether the dismissal should be with or without prejudice was not raised in briefing or at oral argument before the district court. The sole reference to the issue is found in the caption of the defendants' reply memorandum where they added "with prejudice" to the title of their motion to dismiss. It was only after the State moved for leave to amend its complaint—and asserted that the dismissal was with prejudice—that the court labeled it as such.

reporting for Watson Pharma Inc. and Watson Laboratories Inc.[6] The district court, however, denied the State leave to amend. It characterized its prior ruling as a dismissal with prejudice and concluded that the motion to amend was therefore moot. Alternatively, the court found that, "[u]nder the traditional rules for considering a motion to amend," the motion was "untimely and unjustified."

¶10     After several more years of litigation with the remaining defendants, final judgment in the case was entered. The State now appeals the dismissal of its claims against the Watson Defendants.

ISSUES AND STANDARDS OF REVIEW

¶11     The State asserts that the district court incorrectly dismissed its claims against the Watson Defendants for failure to plead those claims with the particularity required by rule 9(c) of the Utah Rules of Civil Procedure. "A district court's grant of a motion to dismiss based upon the allegations in the plaintiff's complaint presents a question of law that we review for correctness." *America West Bank Members, LC v. State*, 2014 UT 49, ¶ 7, 342 P.3d 224 (quotation simplified); *see also State v. Apotex Corp.*, 2012 UT 36, ¶ 16, 282 P.3d 66. When reviewing such a dismissal, "we accept the plaintiff's description of facts alleged in the complaint to be true, but we need not accept extrinsic facts not pleaded nor need we accept legal conclusions in

---

6. The State did not provide representative samples attributable exclusively to the third Watson Defendant—Watson Pharmaceuticals Inc. Instead, in its revised Exhibit A, the State identified Watson Pharmaceuticals Inc. as the parent company to the named subsidiaries. The State also made allegations against and provided representative samples for additional subsidiaries of Watson Pharmaceuticals Inc. not named in earlier versions of its complaint.

contradiction of the pleaded facts." *America West*, 2014 UT 49, ¶ 7 (quotation simplified).

¶12 The State also contends that the district court abused its discretion in dismissing the claims against the Watson Defendants with prejudice. A district court's decision to dismiss with prejudice is reviewed for an abuse of discretion. *See Bonneville Tower Condo. Mgmt. Comm. v. Thompson Michie Assocs., Inc.*, 728 P.2d 1017, 1020 (Utah 1986) (per curiam).

ANALYSIS

¶13 The State contends that dismissal of its claims against the Watson Defendants was improper because the Complaint satisfied the rule 9(c) pleading standard as articulated by the Utah Supreme Court in *State v. Apotex Corp.*, 2012 UT 36, 282 P.3d 66. It also contends that, even if the Complaint did not satisfy rule 9(c), the district court erred in dismissing its claims against the Watson Defendants *with prejudice*, thereby depriving the State of the opportunity to cure any deficiency. We hold that the district court correctly determined that the State's allegations against the Watson Defendants did not satisfy the rule 9(c) standard articulated by the *Apotex* court. We also hold that the district court did not abuse its discretion in dismissing the claims with prejudice.

I. Rule 9(c) Particularity Requirement

¶14 Rule 9(c) of the Utah Rules of Civil Procedure requires that fraud be pleaded "with particularity." In *Apotex*, the supreme court relaxed this standard with respect to the UFCA and related fraud claims like those here, but held that a plaintiff still must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted by each defendant." *Apotex*, 2012 UT 36, ¶¶ 20, 29 (quotation simplified). In affording the State an opportunity to replead its claims to meet the new

standard, the court specifically instructed: "[T]he State must provide reliable indicia that would lead to a strong inference that each Defendant actually made false claims and fraudulent misrepresentations. Whatever the indicia—representative examples, statistical evidence, criminal investigations, etc.—the State must particularize its claims with respect to *each* Defendant." *Id.* ¶ 39 (emphasis in original).

¶15    On appeal, the State contends that the Complaint satisfied the pleading standards of rule 9(c) and *Apotex*, and it takes issue with the district court's conclusion that the State failed to individually identify representative examples for each of the Watson Defendants. While the State must concede that it collectively accuses the Watson Defendants of fraud, it contends that each Watson Defendant was "specifically identified" in the Complaint because the NDC numbers in the embedded chart and Exhibit A contain a "labeler code" unique to each of the three entities. Thus, according to the State, the purpose of rule 9(c) was satisfied because the Watson Defendants were "aware of the allegations against each [entity] specifically" based on the NDC numbers and "[f]urther detail was unnecessary."

¶16    We are not persuaded for several reasons. First, while the State contends that each of the three Watson Defendants is specifically identified in the Complaint by its NDC number, it has not demonstrated that to be true. The State did not provide this court with the Watson Defendants' labeler codes, nor did it provide a way for us to test its unpleaded assertion that the NDC numbers identified in the Complaint belong to the Watson Defendants. The State suggested for the first time in oral argument that this court could consult the "FDA records" to confirm which identifier codes relate to which defendants, but the State has not identified which records to consult or, more importantly, argued that it would be appropriate for us to do so.

¶17    Further, based on a comparison of the representative examples in the State's proposed Fourth Amended Complaint and the Third Amended Complaint, it appears that the NDC

numbers identified collectively under "Defendant Watson" do not correspond to the named Watson Defendants. For example, three different labeler codes within the NDC numbers are listed under "Defendant Watson" in the Third Amended Complaint. In its proposed Fourth Amended Complaint, the State links two of those numbers to Watson subsidiaries not named in the Third Amended Complaint and not parties to this appeal. Thus, apart from the State's failure to prove its assertion, we question whether the Third Amended Complaint did in fact separately identify claims against the three named Watson Defendants.

¶18  Second, even assuming the relevant NDC numbers uniquely correspond to each named Watson Defendant, that assertion is absent from the pleading, and the State did not otherwise advise the district court that the individual Watson Defendants could be separately identified by the labeler codes in the NDC numbers. In *Apotex*, the supreme court specifically instructed the State to "provide an adequate basis for *a court* to infer that *each defendant* submitted false claims or made fraudulent misrepresentations as part of a fraudulent scheme." 2012 UT 36, ¶ 35 (emphases added); *see also America West Bank Members, LC v. State*, 2014 UT 49, ¶ 7, 342 P.3d 224 (noting that a court "need not accept extrinsic facts not pleaded" (quotation simplified)). Thus, it is not enough for the State to simply claim that the Watson Defendants were "aware of the allegations against each [entity] specifically." Rather, the district court was tasked with discerning whether the State had particularized its claims with respect to *each* defendant. And we can hardly fault the district court for not recognizing this alleged particularity when the State pleaded in code and did not give the district court the key.[7]

---

7. The State maintained at oral argument that it had no opportunity to inform the district court about the significance of the NDC numbers. Not only could the State have drafted such detail into the Complaint, but if the State thought that the district

(continued…)

¶19 Finally, even if we were inclined to excuse the State's failure to alert the district court to the secret for unlocking the substance of the Complaint, the State's fraud-based allegations against the Watson Defendants were still pleaded in the collective. The State expressly alleged that the Watson Defendants, collectively, were responsible for reporting fraudulent AWP prices related to all of the drugs listed in the "Defendant Watson" chart. In other words, even if each drug could be linked to a particular Watson Defendant based on the drug's NDC number, the State still alleged collective responsibility for the alleged fraudulent reporting relating to those drugs. And while the State's amended pleading certainly narrowed the association in comparison to what the State had alleged pre-*Apotex*, insofar as it related to the Watson Defendants, the State continued to rely on the "guilt-by-association" theory renounced by the *Apotex* court. *See Apotex*, 2012 UT 36, ¶ 28. There, the court repeatedly emphasized the importance of particularizing the claims "with respect to *each* Defendant," *id.* ¶¶ 29, 35, 39, explaining that alleging guilt by association "provides no particularity supporting claims of fraud and the submission of false claims by any given defendant," *id.* ¶ 36. So too here.

¶20 In reaching our conclusion, we recognize that the State's fraud-based claims were pleaded in the Complaint with much

---

(…continued)

court's decision resulted from a failure to understand the significance of the NDC numbers, the State could have asked the district court to reconsider on that basis. *See Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 15, 232 P.3d 999 (noting that a court "remains free to revisit its rulings" while the case is ongoing); *see also True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 39, 427 P.3d 338 (explaining that rule 54(b) of the Utah Rules of Civil Procedure provides a "procedural mechanism" for parties to ask the district court to revisit issues before a final judgment).

more specificity than they had been previously. And the district court recognized as much. With regard to the other defendants named in the Complaint, the court denied their motion to dismiss, concluding that the State's allegations of representative examples of fraud, "set forth in chart format identifying particular drugs manufactured by specific Defendants," were sufficient to satisfy rule 9(c) and *Apotex*. Yet the district court declined to excuse a lack of particularity among the Watson Defendants simply because they are related entities. Given the clear instructions articulated by the supreme court in *Apotex*, *see id.* ¶ 39, coupled with well-established principles regarding corporate separateness, we discern no error in that approach, *see Institutional Laundry, Inc. v. Utah State Tax Comm'n*, 706 P.2d 1066, 1067 (Utah 1985) (per curiam) ("A corporation, be it parent or subsidiary, has its own legal identity and existence. Common ownership or control does not automatically destroy that separate identity.").

¶21 All in all, the State has not convinced us that the NDC labeler codes in the Complaint adequately identify the Watson Defendants. And even if true in theory, the State never informed the district court of the significance of the labeler codes. Instead of pleading with particularity, the State continued to plead guilt by association. The State has therefore not met its pleading burden as to the Watson Defendants under rule 9(c) and *Apotex*, and the district court correctly dismissed the claims against them.

## II. The Dismissal with Prejudice

¶22 Alternatively, the State contends that even if the district court did not err in dismissing its claims against the Watson Defendants, it abused its discretion in dismissing those claims with prejudice. It maintains that dismissal with prejudice was a harsh remedy that prevented the State from presenting its case on the merits. Specifically, it asserts that it was harmed because

dismissal with prejudice denied it "the opportunity to amend its Complaint."[8] Had dismissal been without prejudice, and amendment allowed, the State asserts that "the real controversy" could have been decided. (Quotation simplified.)

¶23   Generally, "a failure to plead [a] claim at an adequate level of detail" should result in dismissal "without prejudice." *America West Bank Members, LC v. State*, 2014 UT 49, ¶ 37, 342 P.3d 224; *see also Alvarez v. Galetka*, 933 P.2d 987, 991 (Utah 1997) ("Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." (quotation simplified)). But "[a]t some point, the failure to plead a claim at a sufficient level of detail" can warrant dismissal with prejudice, such as when "the plaintiff has had multiple opportunities to amend and has continually failed to state a claim." *America West*, 2014 UT 49, ¶ 41 n.1; *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) (noting that a "court has considerable leeway . . . in deciding when a complaint is formally insufficient and whether to permit leave to replead").

¶24   Here, the State had been given multiple opportunities— three—to amend its complaint and "continually failed to state a claim." *See America West*, 2014 UT 49, ¶ 41 n.1. And after *Apotex*,

---

8. The State in fact filed a motion for leave to amend in the district court, which the district court denied. Although the State's brief challenges the basis for that denial, it does not appeal from the decision. The State's notice of appeal designated only the district court's order dismissing its claims against the Watson Defendants as the decision appealed from—it did not list the court's denial of its motion for leave to amend. Utah R. App. P. 3(d) ("The notice of appeal shall . . . designate the judgment or order, or part thereof, appealed from . . . ."). Also, during oral argument, the State twice disclaimed any intention of appealing the court's order denying amendment. Thus, we do not consider the merits of that order.

the State had specific instructions from the supreme court on how to remedy its pleadings and satisfy rule 9(c). *State v. Apotex Corp.*, 2012 UT 36, ¶ 39, 282 P.3d 66; *see also supra* Part I. In opposing the motion to dismiss the State never suggested that it should be given yet another opportunity to replead in the event the Complaint was still insufficient. Neither did it argue that such an opportunity would be warranted in this case.

¶25 Even on appeal, the State merely asserts that "the trial court committed an abuse of discretion" because the State "demonstrated it could easily cure the court's concerns."[9] But as the district court noted in its order denying leave to amend, the State had "already been granted leave to file three prior amended complaints" and "had the opportunity to identify the correct Defendants at a much earlier date." And even with a detailed roadmap from the supreme court in hand, the State still failed to state a claim with the requisite particularity against each of the Watson Defendants. Thus, while focusing on the general rule, the State neglects the discretion afforded to the district court to dismiss with prejudice under the circumstances of this case. We therefore discern no abuse of discretion in the district court's dismissal with prejudice of the claims against the Watson Defendants.

## CONCLUSION

¶26 We conclude that the State did not meet rule 9(c)'s pleading standard and the district court correctly dismissed the State's claims against the Watson Defendants. We also conclude that the district court did not abuse its discretion in dismissing those claims with prejudice. Accordingly, we affirm.

_____

9. We are skeptical that even the Fourth Amended Complaint remedied all the district court's concerns. *See supra* ¶ 9 & n.6.