2024 UT App 7

# THE UTAH COURT OF APPEALS

VERONICA RODRIGUEZ,
Appellant,
*v.*
KRISTA LEEANN CROSBY,
Appellee.

Opinion
No. 20210789-CA
Filed January 11, 2024

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 200905265

Peter R. Mifflin and Victor Jackson,
Attorneys for Appellant

Mark L. Anderson and Alan K. Beal,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which JUDGES MICHELE M. CHRISTIANSEN FORSTER and AMY J. OLIVER concurred.

LUTHY, Judge:

¶1 A plaintiff suing for general damages—often referred to as pain and suffering or noneconomic damages—arising from an automobile accident usually must have sustained an injury that meets a particular threshold. *See* Utah Code § 31A-22-309(1)(a); *see also Pinney v. Carrera*, 2020 UT 43, ¶¶ 35–36, 469 P.3d 970 (describing categories of damages). Following a 2017 car accident in which Veronica Rodriguez's daughter (Child) sustained a broken wrist, Rodriguez filed a lawsuit seeking general damages on behalf of Child against Krista Leeann Crosby, the individual who caused the accident. Crosby moved for summary judgment, asserting that Child's injury did not meet the statutory threshold for bringing such a suit.

¶2     Rodriguez responded, arguing that there was at least a material dispute of fact as to whether Child's injury satisfied the threshold requirement—both under the version of the statute in effect at the time of the accident and under an amended version of the statute in effect at the time of the anticipated trial. The district court agreed with Crosby, granted summary judgment in her favor, and dismissed Rodriguez's claim with prejudice, holding that the earlier version of the statute applied and that Child's injury did not meet the threshold requirement under that version of the statute. We see no error or abuse of discretion in the court's ruling, and we therefore affirm.

BACKGROUND

¶3     In September 2017, Rodriguez and Child were passengers in a van driving eastbound toward an intersection when Crosby, heading westbound, turned left in front of their moving vehicle in the intersection and caused a collision. As a result of the collision, Child suffered fractures in her right wrist.[1] Child's injuries did not require surgery, but a cast was placed on her arm for approximately six weeks, after which "[n]o additional treatment was recommended" and she apparently understood "that healing was complete."

¶4     Nearly three years later, in August 2020, Rodriguez, on behalf of Child, filed suit against Crosby alleging general damages due to Crosby's negligence. As to threshold injuries, Rodriguez's complaint alleged that Child sustained "injury to her right wrist," "medical expenses exceeding $3,000," and "a lifelong injury" due to Crosby's negligence.

---

1. There is no dispute among the parties that Crosby caused the accident and that Child's arm was fractured as a result of the accident.

¶5    Crosby retained a medical expert, Dr. Newton, to provide testimony regarding Child's injury. He examined Child and prepared a report containing his medical findings. In his report, Dr. Newton concluded that Child's wrist fractures, which he categorized as "torus fractures with buckling but no significant angulation," were "apparently well healed with some residual pain symptoms." Dr. Newton noted Child's ongoing subjective complaints of pain and addressed whether they were supported by objective findings:

> There are some ongoing vague wrist complaints. Healing is complete and adequate. I cannot really define a structural diagnosis for the ongoing symptoms. Subjective symptoms do exceed what we would typically expect; however, I feel that there is a likelihood that these symptoms will eventually resolve but may require some treatment.

Dr. Newton acknowledged that Child's "[w]rist strength is less than ideal and is somewhat pain limited" and that "[h]er motion is also somewhat limited as compared to the contralateral side." But he opined that the reason for this was that Child had "not gained confidence" with regard to the wrist and that "there is some anxiety component that is hindering her progress." So although Dr. Newton was of the opinion that "there should not be any long-term consequences" of the fractures, he did recognize that "there is progress to be made." To that end, he recommended six to eight "visits of physical therapy to reassure [Child] and give her confidence in . . . her wrist capacity" and an "exercise program," which he said "should be employed until she feels that the wrist is normal."

¶6    In 2021, two and a half months before the scheduled trial, Crosby filed a summary judgment motion asserting that she was "not liable for general damages as a matter of law as [Child] failed to meet the statutory threshold requirement" in effect in 2017, at

the time of the accident. The 2017 list of qualifying threshold injuries included those resulting in "death," "dismemberment," "permanent disability or permanent impairment based upon objective findings," "permanent disfigurement," and "medical expenses to a person in excess of $3,000." Utah Code § 31A-22-309(1)(a) (2017). Pointing to Dr. Newton's report and the fact that Rodriguez's initial disclosures showed a total of only $929.50 in incurred medical expenses, Crosby asserted that Rodriguez had failed to provide evidence to support that Child "suffered a permanent partial disability or incurred medical expenses in an amount exceeding $3000.00."

¶7    Rodriguez opposed Crosby's motion, arguing that because the determination of whether a plaintiff satisfies the threshold injury requirement is made as of the time of trial, the court should apply a then newly amended version of the threshold injury statute—the 2021 version—which had added "a bone fracture" to the list of qualifying threshold injuries. *Id.* § 31A-22-309(1)(a) (2021). Rodriguez also argued, in the alternative, that even under the 2017 version of the statute (1) "[t]here is a question of fact as to whether a broken arm constitutes dismemberment" and thus qualifies as a threshold injury; (2) a jury could find that Child's ongoing symptoms years after the accident showed a permanent impairment; and (3) considering Dr. Newton's physical therapy recommendations, it was "not impossible" that Child would "incur at least $3,000 of medical expenses prior to trial."

¶8    After a hearing on the matter, the district court granted Crosby's motion for summary judgment, determining that the 2017 version of the statute applied and that Rodriguez had not produced evidence to support a finding of any of the threshold injuries listed in that version. Specifically, the court noted that Child's medical expenses had not reached the $3,000 threshold, and it reasoned that a permanent impairment could not be shown by Child's complaints of ongoing pain where she had "quit seeing any provider" and had not "even attempted to try to get it fixed."

The court then entered a written order dismissing Rodriguez's claim with prejudice. Rodriguez now appeals that order.

ISSUES AND STANDARDS OF REVIEW

¶9      On appeal, Rodriguez contends that the district court erred in granting Crosby's motion for summary judgment, including by applying the wrong version of the threshold injury statute. "We review the district court's decision to grant summary judgment for correctness, granting no deference to the district court." *Noor v. State*, 2019 UT 3, ¶ 18, 435 P.3d 221 (cleaned up). Likewise, "determining which version of a statute applies is a matter of statutory interpretation, which presents a question of law which we review for correctness." *State v. Walker*, 2013 UT App 198, ¶ 12, 308 P.3d 573 (cleaned up).

¶10      Beyond her claims regarding the propriety of summary judgment, Rodriguez asserts error in the district court's decision to dismiss her claim with prejudice. "A district court's decision to dismiss with prejudice is reviewed for an abuse of discretion." *State v. Watson Pharms. Inc.*, 2019 UT App 31, ¶ 12, 440 P.3d 727.

ANALYSIS

I. Retroactivity of the Statutory Amendment

¶11      Rodriguez first contends that the district court erred by applying outdated law to the undisputed facts of the case. Specifically, she contends that the court should have applied the current version of Utah Code section 31A-22-309 (the version that became effective in 2021 and would have been in effect at the time of trial) as opposed to the version in effect at the time of the accident—the key difference between the versions being that the current version includes "a bone fracture" among the enumerated

threshold injuries for which a cause of action may be maintained. *Compare* Utah Code § 31A-22-309(1)(a) (2017), *with id.* (2023).

¶12 "The courts of this state operate under a statutory bar against the retroactive application of newly codified laws." *State v. Clark*, 2011 UT 23, ¶ 11, 251 P.3d 829; *see also* Utah Code § 68-3-3. The only exception to this bar occurs when the newly codified law "is expressly declared to be retroactive."[2] Utah Code § 68-3-3. The legislature did not make the statutory change at issue here explicitly retroactive; thus, the district court was required to apply the version of the statute "as it exist[ed] at the time of the event regulated by the law in question." *Clark*, 2011 UT 23, ¶ 13.

¶13 Therefore, to determine whether the district court applied the correct statute, we must consider what event is regulated by the statute. In this regard, the Utah Supreme Court has explained as follows:

> On matters of *substance* the parties' primary rights and duties are dictated by the law in effect at the time of their underlying primary conduct (e.g., the conduct giving rise to a criminal charge or civil claim). When it comes to the parties' *procedural* rights and responsibilities, however, the relevant underlying conduct is different: the relevant

---

2. Rodriguez contends that the Utah Supreme Court "has recognized a judge-created exception" to the statutory bar in cases where a legislative amendment was meant to clarify an earlier law. But the supreme court has said that although it "has occasionally referred to 'amendments clarifying statutes' as an 'exception' to the retroactivity ban, [it has] never applied them as such." *Gressman v. State*, 2013 UT 63, ¶ 16, 323 P.3d 998 (quoting *Keegan v. State*, 896 P.2d 618, 620 (Utah 1995)). And the court has specifically repudiated this purported exception. *See id.*; *Waddoups v. Noorda*, 2013 UT 64, ¶ 9, 321 P.3d 1108.

occurrence for such purposes is the underlying procedural act (e.g., filing a motion or seeking an appeal). The law governing this procedural occurrence is thus the law in effect at the time of the procedural act, not the law in place at the time of the occurrence giving rise to the parties' substantive claims.

*Id.* ¶ 14.

¶14   The statute at issue here sets forth the specific types of injuries for which an individual may "maintain a cause of action for general damages arising out of personal injuries alleged to have been caused by an automobile accident." Utah Code § 31A-22-309(1)(a). By adding another type of injury to this list, the legislature's 2021 amendment expanded the circumstances in which a personal injury claim is available to an accident victim. Or, seen from the other side, the statute expanded the situations in which an at-fault defendant may be liable for general damages. Thus, the statute is clearly a substantive law. *See Waddoups v. Noorda*, 2013 UT 64, ¶ 8, 321 P.3d 1108 ("Laws that enlarge, eliminate, or destroy vested or contractual rights are substantive and are barred from retroactive application absent express legislative intent." (cleaned up)); *Brown & Root Indus. Service v. Industrial Comm'n*, 947 P.2d 671, 675 (Utah 1997) ("Substantive law is defined as the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause of action." (cleaned up)).

¶15   Rodriguez correctly points out that whether the threshold injury requirement has been met is a determination that is not made until the time of trial. *See Jepson v. State, Dep't of Corr.*, 846 P.2d 485, 488 (Utah Ct. App. 1993) (concluding that the plaintiff could meet the threshold injury of one resulting in medical expenses in excess of $3,000 "so long as his expenses exceeded the statutory minimum *at time of trial*" (emphasis added)). However,

the determination of whether one of the applicable threshold injuries *has been shown* is not the same as a determination of what the applicable threshold injuries *are*. While plaintiffs have until trial to show that they sustained a threshold injury, the substantive question of what qualifies as a threshold injury is determined as of the time of the accident, when the cause of action accrued, *see id.* (holding that a personal injury cause of action arising from an automobile accident accrues "on the date of the accident"). Accordingly, the district court was correct to apply the 2017 version of the statute in its summary judgment determination.

## II. Dismemberment

¶16    Rodriguez argues, in the alternative, that her claim is viable even under the 2017 version of Utah Code section 31A-22-309 because, even though the statute did not then expressly include a bone fracture as a threshold injury, a bone fracture was included within the term "dismemberment." She contends that a bone fracture is a form of dismemberment that was always implicitly included in the statutory list of threshold injuries, and that the 2021 amendment simply clarified its inclusion. We are not convinced.

¶17    "In interpreting a statute, our goal is to ascertain the Legislature's intent. We do so by first evaluating the best evidence of legislative intent, namely, the plain language of the statute itself." *Wasatch County v. Okelberry*, 2008 UT 10, ¶ 13, 179 P.3d 768 (cleaned up). The plain meaning of the term "dismemberment," as applied to a human body, is the action of dividing the body into pieces or cutting off portions of the body, most commonly in reference to the removal of limbs from the body. *See Dismember*, Merriam-Webster, https://www.merriam-webster.com/dictionary/dismemberment [https://perma.cc/VFV8-DLVK] (defining "dis-member" as "to cut off or disjoin the limbs, members, or parts of" or "to break up or tear into pieces"); *see also Dismemberment*,

Cambridge English Dictionary, https://dictionary.cambridge.org/ us/dictionary/english/dismemberment [https://perma.cc/VE6H-Q4FX] (defining "dismemberment" as "the action of cutting, tearing, or pulling the arms and legs off a body"); *Dismemberment*, Collins English Dictionary, https://www.collinsdictionary.com/ dictionary/english/dismemberment [https://perma.cc/S4ZL-M8KW] ("Dismemberment is the cutting or pulling into pieces of a body."); *Dismember*, Dictionary.com, https://www.dictionary.com/ browse/dismember [https://perma.cc/79W9-VVKQ] (defining "dismember" as "to deprive of limbs; divide limb from limb" or "to divide into parts; cut to pieces; mutilate").[3] *See generally GeoMetWatch Corp. v. Utah State Univ. Rsch. Found.*, 2018 UT 50, ¶ 21, 428 P.3d 1064 ("Dictionaries provide a useful starting point when assessing the ordinary meaning [of statutory terms].").

¶18   In the case of a bone fracture, including a limb fracture, the body remains in one piece and the limb remains connected to the body. This is more obviously the case for the type of fracture apparently at issue here—a torus (or buckle) fracture—where the bone itself does not break into multiple pieces but suffers

---

3. Rodriguez points out that "fracture" is listed as a synonym for "dismember" in the Merriam-Webster dictionary's entry for that term. *See Dismember*, Merriam-Webster, https://www.merriam-webster.com/dictionary/dismemberment [https://perma.cc/VFV8-DLVK]. However, the synonyms listed in that entry vary widely as to the seriousness of the separation they indicate and include a term as mild as "disrupt." *Id.* Additionally, "dismemberment" is a term that can be applied to things other than the human body, such as organizations or relationships. While in some contexts we might agree that "fracture" could be an accurate synonym of "dismember," we are not persuaded that dismemberment as applied to the human body is synonymous with the fracturing (or disrupting) of a bone. In short, Merriam-Webster's listed synonyms simply cannot all be taken as reflective of the plain and ordinary meaning of a particular statutory term.

compression and bulging on part of the bone. *See, e.g.*, *Buckle (Torus) Fractures of the Wrist*, Tex. Children's Hosp., https://www.texaschildrens.org/health/buckle-torus-fractures-wrist [https://perma.cc/A29R-MKCN] ("Buckle fractures are NOT what most people think of when they think of a fracture or broken bone. The fracture does not go through the entire bone."); *Buckle Fracture (Impacted Fracture)*, Cleveland Clinic, https://my. clevelandclinic.org/health/diseases/22235-buckle-fracture [https:// perma.cc/752T-LKRP] ("Buckle fractures are . . . an incomplete fracture, which means the break doesn't go all the way through the bone. . . . [Sudden pressure] pushes on [a] child's bone hard enough to bulge it out of place. The pressure 'buckles' the bone without snapping it.").

¶19 Moreover, we think it axiomatic that people do not commonly understand a broken bone to be a type of dismemberment. *See generally Okelberry*, 2008 UT 10, ¶ 13 ("We give the words of a statute their plain, natural, ordinary, and commonly understood meaning, in the absence of any statutory or well-established technical meaning, unless it is plain from the statute that a different meaning is intended." (cleaned up)). To illustrate, when a child breaks an arm at recess, the school administrator informs the parent by referring to a broken bone or fracture, not by telling the parent that the child has suffered a dismemberment on the playground—and certainly the reaction of the parent would be quite different depending on which of these communications was received.

¶20 Furthermore, "[w]e generally presume that any amendment to a statute indicates a legislative intent to change existing legal rights and therefore is not a reliable indication of intent as to the earlier, unamended statute." *Miller v. Weaver*, 2003 UT 12, ¶ 24, 66 P.3d 592. Thus, if the legislature intended, as Rodriguez contends, for a bone fracture to be encompassed within the 2017 term "dismemberment" and the 2021 amendment to be merely a clarification of that intent, it would have needed to do

more than simply add "a bone fracture" to the list of threshold injuries. By adding "a bone fracture" as a separate threshold injury—on equal footing with "dismemberment" and located several subsections away from "dismemberment," *see* Utah Code § 31A-22-309(1)(a)(ii), (v)—the legislature indicated no such intent. We accordingly remain unconvinced by Rodriguez's argument that a broken bone was implicitly included within "dismemberment" in the 2017 version of the statute.

### III. Permanent Impairment

¶21    Rodriguez also asserts that she provided evidence from which a jury could have found that Child suffered the threshold injury of "permanent impairment based upon objective findings." Utah Code § 31A-22-309(1)(a)(iii) (2017). Specifically, she points to Dr. Newton's opinions that Child's "[w]rist strength is less than ideal and is somewhat pain limited" and that "[h]er motion is also somewhat limited." She contends that Dr. Newton's confirmation that Child "is still symptomatic after reasonable and necessary medical treatment" is sufficient "to reach the jury regarding the issue of permanent impairment." We disagree.

¶22    A permanent impairment is a "loss of function" that "is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." *Pinney v. Carrera*, 2019 UT App 12, ¶¶ 24–25, 438 P.3d 902 (cleaned up), *aff'd*, 2020 UT 43, 469 P.3d 970. But whether the pain and limited motion Child was experiencing rendered it reasonably certain that the injury would continue throughout Child's life is not the sort of determination that is within a layperson's knowledge. *See generally id.* ¶ 27 ("Typically—except in obvious cases—where an alleged injury involves medical factors beyond the ken of an ordinary lay person, expert testimony is required."). Therefore, a jury in this case would need to rely on expert testimony for a determination of permanent impairment. *See Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29,

¶ 54, 513 P.3d 729 ("[W]here jurors cannot, without unjustifiable speculation, resolve a dispute based on the facts of the case and their own experiences, expert testimony is required.").

¶23 The only expert evidence provided on the issue of permanence was Dr. Newton's report, in which he repeatedly expressed his opinion that any current limitations were not permanent and that Child could expect a full recovery. Even the portions of the report relied on by Rodriguez, when placed in context, indicate that any lingering symptoms need not be permanent. While Dr. Newton acknowledged that Child's "[w]rist strength is less than ideal" and "somewhat pain limited," as well as that Child's "motion is somewhat limited," he indicated that these symptoms were due to "anxiety" and a lack of "confidence" regarding the wrist and that progress could be made through six to eight "visits of physical therapy" and an "exercise program," which "should be employed until she feels that the wrist is normal." And when questioned as to whether there were objective findings supporting Child's subjective complaints, Dr. Newton responded as follows:

> There are some ongoing wrist complaints. Healing is complete and adequate. I cannot really define a structural diagnosis for the ongoing symptoms. Subjective symptoms do exceed what we would typically expect; however, I feel that there is a likelihood that these symptoms will eventually resolve but may require some treatment.

¶24 After expressing those opinions, Dr. Newton said that Child "is not at risk for premature osteoarthritis of the wrist," that Child "is not typically at risk for avascular necrosis or ligamentous injury of the wrist or [triangular fibrocartilage complex] injury," that "[h]er exam is fairly benign from a structural standpoint," that "it is not expected that there will be functional deterioration or the development of premature

pathology in the wrist joint," and, in sum, that "there should not be any long-term consequences" from the fracture. Moreover, when specifically asked, "Does [Child] have, or do you anticipate [Child] having, a permanent impairment (disability) as a result of this injury?" Dr. Newton answered as follows:

> By the AMA and Utah Guidelines, a healed nondisplaced fracture does not qualify for permanent impairment. I do feel, however, that there is progress to be made. I would be disappointed if this would represent maximum medical improvement. I expect that she will eventually feel unrestricted in her distal right upper extremity function.

¶25 In sum, despite Dr. Newton's acknowledgement that there were ongoing symptoms and room for improvement, he repeatedly and consistently asserted that Child's symptoms were not indicative of permanent impairment. And no other expert opinion was provided from which a jury could have determined otherwise. Thus, it was not erroneous for the court to determine, as a matter of law, that the threshold injury of permanent impairment was not shown in this case.

### IV. Dismissal with Prejudice

¶26 Finally, Rodriguez contests the dismissal of her claim *with prejudice*.[4] She asserts that it was "error to forever bar a claim where the evidence provides some indication that the plaintiff is capable of satisfying the monetary threshold amount at some

---

4. Crosby contends that Rodriguez failed to preserve this issue for review. However, "if the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 (cleaned up), *cert. denied*, 496 P.3d 718 (Utah 2021). Such is the case here.

point in the future." Specifically, Rodriguez argued below that "[a]s Dr. Newton has recommended a course of [six to eight sessions of] physical therapy, it is not impossible for [Rodriguez] to reasonably and necessarily incur at least $3,000 in medical expenses prior to trial." And she contends on appeal that "[i]t is indeed disturbing that a district court . . . would fully and finally adjudicate a minor's claim on threshold [injury]" when a "medical expert [has] opined that the future medical care for that minor child would be reasonable, necessary and related to the subject accident" and "the minor is not even legally capable of steering the course of her medical treatment or the litigation."

¶27    However, the disclosed medical expenses amounted to less than $1,000, and Rodriguez presented no evidence suggesting that the $3,000 threshold might be reached if Child attended the remaining treatment that had been recommended—six to eight additional physical therapy sessions. Nor was it clear that Child would be participating in any such sessions in the few weeks remaining before the scheduled trial. And Rodriguez made no request to delay trial until after the recommended therapy was pursued or more could be learned about its associated costs. While it is true that Child was not the one steering the course of her medical treatment or the course of litigation, it was Rodriguez's responsibility to make treatment choices on behalf of her minor child in any event, *see Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 73, 250 P.3d 465 (stating that parents have a fundamental right to make decisions regarding their children's medical care), and it was Rodriguez's choice to file suit on her minor child's behalf where the statute of limitations did not begin to run until Child became an adult, *see* Utah Code § 78B-2-108(2), (3) (stating that "[d]uring the time that an individual is underage," the statute of limitations, including for a claim for general damages, "may not run"). She therefore bears the burdens that go with that responsibility and choice.

¶28    "A district court's decision to dismiss with prejudice is reviewed for an abuse of discretion," *State v. Watson Pharms. Inc.*, 2019 UT App 31, ¶ 12, 440 P.3d 727, and given the foregoing, we conclude that the district court did not abuse its discretion here.

CONCLUSION

¶29    The district court correctly applied the version of Utah Code section 31A-22-309 that was in effect at the time of the accident. Because, as a matter of law, a broken bone does not qualify as "dismemberment" and the required expert evidence of a permanent injury was not established in this case, Child's injury did not qualify as any of the threshold injuries listed in the statute. And under the circumstances of this case, the district court did not abuse its discretion by dismissing Rodriguez's claim with prejudice. We therefore affirm the district court's ruling.

——————————