2022 UT App 63

## THE UTAH COURT OF APPEALS

SOUTH WEBER CITY,
Appellee,
*v.*
COBBLESTONE RESORT LLC, WONAE MIER,
AND DUSTIN SHIOZAKI,
Appellants.

Opinion
No. 20210028-CA
Filed May 12, 2022

Second District Court, Farmington Department
The Honorable Robert J. Dale
No. 200700543

Matthew J. Morrison, Attorney for Appellants

Robert C. Keller, Danica N. Cepernich, and
Nathanael J. Mitchell, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Cobblestone Resort LLC, Wonae Mier, and Dustin Shiozaki
(collectively, Cobblestone) appeal the district court's order
granting South Weber City's (South Weber) motion to enjoin the
ongoing use of a property owned by Cobblestone for short-term
or vacation rentals without a valid business license. We affirm.

BACKGROUND

¶2     In August 2018, Cobblestone purchased a residence with a
pool (the Property) located in South Weber. At the time of the

purchase, Cobblestone's intent was to "expand the [P]roperty" and operate "a successful Airbnb business." Shortly after purchasing the Property, Cobblestone began renting it as a short-term rental (STR).

¶3 The Property is and has always been located within South Weber's agricultural zone. Since 2016, the permitted uses for an agricultural zone have been limited to the following:

- accessory uses and buildings;
- agriculture;
- animal keeping on lots at least one-half acre in area;
- dwellings, one-family;
- farm industry on parcels or lots five acres or larger;
- fruit and vegetable stands of the sale of produce grown on the premises or of agricultural products used on the premises;
- home occupations, except preschools and daycare;
- mobile businesses; and pets, the keeping of household pets.

*See* South Weber, Utah, Code § 10-5E-2. STRs were not included among the conditional uses for an agricultural zone. *See id.* § 10-5E-3.

¶4 In May 2019, South Weber adopted an ordinance (the Ordinance) regulating "short-term or vacation rentals." Among other things, the Ordinance required a conditional use permit "for each unit used as a short-term or vacation rental, regardless of the zone, type, or primary use of the property." *Id.* § 10-18-3(A). The Ordinance further required that "[a]s a condition of receiving a conditional use permit and prior to conducting business, the applicant shall . . . [a]pply for and pay the annual City business license fee, with the license to be issued after the conditional use

permit is granted." *Id.* § 10-18-3(D)(2). At the same time that the Ordinance was enacted, South Weber also added "short-term or vacation rental" to the list of businesses for which "it shall be unlawful . . . to operate . . . within [South Weber] without first making an application to [South Weber] and obtaining a business license." *Id.* § 3-2-1(A)(7).

¶5    Following enactment of the Ordinance, Cobblestone applied for a conditional use permit so that it could continue using the Property as an STR. It also submitted an application for a business license.

¶6    In August 2019, South Weber City's Planning Commission held a meeting during which it approved Cobblestone's conditional use permit application subject to a number of conditions. After the conditional use permit was approved, the South Weber City Manager "reminded those in attendance [at the meeting] that the conditional use permit is not the business license" and that "there are still a few steps that need to be reviewed for the business license for [the Property]."

¶7    Approximately one month later, Cobblestone was issued a series of three "strikes" for violations of the conditional use permit. Thereafter, the Planning Commission met to discuss concerns over the conditional use permit. Based on the evidence that had been presented, the Planning Commission voted to immediately revoke Cobblestone's conditional use permit.

¶8    In November 2019, the South Weber City Council held a meeting during which it discussed revoking Cobblestone's conditional use permit. The City Council acknowledged there was some "misunderstanding" regarding whether the power to revoke a conditional use permit belonged to the Planning Commission or to the City Council, but ultimately it agreed with the Planning Commission's decision and voted to immediately revoke Cobblestone's conditional use permit.

¶9    Cobblestone appealed the City Council's decision administratively. In its appeal, Cobblestone argued, among other things, that its use of the Property as an STR was "a continuously maintained nonconforming use." It simultaneously filed an affidavit of conforming use with South Weber. In April 2020, the City Council's decision was reversed on procedural grounds and the matter was remanded to the City Council for further action.[1]

¶10    In June 2020, police were dispatched to the Property after a neighbor witnessed an altercation involving people renting the Property, during which a firearm was discharged multiple times.[2] One month later, South Weber filed a complaint in district court seeking to enforce its ordinances against Cobblestone and for declaratory judgment that Cobblestone's use of the Property as an STR is not a legal nonconforming use and that it is therefore subject to the Ordinance. South Weber also filed a motion for a temporary restraining order and preliminary injunction preventing Cobblestone from operating any business at the Property. In its motion, South Weber argued it was entitled to injunctive relief pursuant to Utah Code section 10-9a-802. Under that section, a municipality may seek enforcement of its ordinances by instituting, among other things, injunctions enjoining the unlawful use, and "[a] municipality need only establish the violation to obtain the injunction." Utah Code Ann.

---

1. South Weber did not take any action on Cobblestone's pending business license application from October 2019 through April 2020 because it considered the conditional use permit—a predicate for an STR business license—to be revoked.

2. South Weber also received a number of complaints from neighbors that the Property had been used for other revenue-generating activities, all of which would require a business license. These activities include renting the Property as a studio for a boudoir photography business; private pool parties; and special events, including a wedding reception.

§ 10-9a-802(1)(a) (LexisNexis Supp. 2021). Shortly thereafter, the parties stipulated to a partial preliminary injunction under which Cobblestone was enjoined from using the Property for any business activity except "short term rental."

¶11    In November 2020, the district court held a hearing on the request for injunction. At the close of the hearing, the court granted South Weber's motion and enjoined Cobblestone, under Utah Code section 10-9a-802, from operating the Property as an STR without a valid business license. The court held that Cobblestone's use of the Property as an STR without a business license was a violation of the Ordinance, that Cobblestone's use of the Property did not constitute a nonconforming use that would exempt it from the Ordinance, and that none of the defenses Cobblestone raised precluded entry of the injunction. In its written order, the court explained that STRs "are not included" in the South Weber City Code's (South Weber Code) list of permitted uses, and "[t]hey would have to be . . . for [Cobblestone] to prevail on [its] claim that [its] use of the Property is a nonconforming use." The court also noted the use of the Property as an STR did not fall within the definition of "Dwelling, one-family," which was one of the "permitted uses closest to [Cobblestone's] use of the Property."

¶12    Following entry of the district court's order, the parties filed a stipulation and motion for final judgment. The court granted the motion and entered a final judgment on December 4, 2020, providing that the preliminary injunction "remains in full force and effect unless altered by this Court or any ruling on appeal."[3]

---

3. Although not part of the record on appeal, since the entry of the district court's order, South Weber has denied Cobblestone's application for a business license. Cobblestone appealed, and the

(continued…)

ISSUES AND STANDARDS OF REVIEW

¶13    Cobblestone now appeals and raises two issues for our review. First, Cobblestone argues the district court erred in interpreting the South Weber Code to determine that Cobblestone's use of the Property as an STR was not a permitted, legal nonconforming use. "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusions." *Ellison v. Stam*, 2006 UT App 150, ¶ 16, 136 P.3d 1242 (quotation simplified). "We apply the same standard to the [district] court's interpretation of an ordinance." *Town of Alta v. Ben Hame Corp.*, 836 P.2d 797, 800 (Utah Ct. App. 1992).

¶14    Second, Cobblestone argues that even if its use of the Property as an STR does not constitute a legal nonconforming use that would exempt it from the business license requirement, South Weber should be estopped from enforcing the Ordinance's business license requirement under the doctrine of equitable estoppel. "The issue of whether equitable estoppel has been proven is a classic mixed question of fact and law." *Iota, LLC v. Davco Mgmt. Co.*, 2012 UT App 218, ¶ 12, 284 P.3d 681 (quotation simplified). Therefore, we grant the district court's decision "a fair degree of deference when we review . . . whether the requirements of the law of estoppel have been satisfied." *Id.* (quotation simplified). We will overturn a district court's decision to grant an injunction only if the court abused its discretion. *See Carrier v. Lindquist*, 2001 UT 105, ¶ 26, 37 P.3d 1112.[4]

---

South Weber City Council denied that appeal in May 2021, upholding the denial of the application.

4. Cobblestone also argues the doctrine of unclean hands should be invoked against South Weber to prevent enforcement of the

(continued…)

ANALYSIS

### I. Cobblestone's Use of the Property as an STR Was Not a Permitted, Legal Nonconforming Use.

¶15 Cobblestone first argues the district court erred in determining that its use of the Property as an STR prior to the adoption of the Ordinance was not a permitted, legal nonconforming use. We disagree.

¶16 The South Weber Code specifies the zoning classifications applied to property within South Weber. It provides,

> No land shall be used or occupied, no building or structure shall be designed, erected, altered, used or occupied for use, except for uses specifically permitted on the land upon which the building or structure is located or erected or use established as permitted in the regulations for the zone in which said land is located.

South Weber, Utah, Code § 10-11-6(A). However, the South Weber Code also allows

> for the continuation of use of any building structures, . . . which either *existed as a legal use* before the effective date hereof or which *was lawfully operated or used thereafter* in accordance with the provisions of the ordinance codified herein, but

---

injunction. But this argument is inadequately briefed because Cobblestone fails to provide "meaningful legal analysis" explaining why South Weber's actions in pursuing the injunction amount to unclean hands or sufficient "citation to relevant legal authority." *See Fraughton v. Utah State Tax Comm'n*, 2019 UT App 6, ¶ 21, 438 P.3d 961 (quotation simplified). Thus, we do not address it further.

> which by reason of amendment to this title became
> a use which is not permitted in the zone in which it
> is located.

*Id.* § 10-10-1 (emphasis added).

¶17    In May 2019, South Weber adopted the Ordinance, which required a conditional use permit and a business license for a property to be used as an STR. *Id.* § 3-2-1(A)(7); *see also id.* § 10-18-3. Thus, pursuant to the South Weber Code, the Property could be exempt from the Ordinance only if its use as an STR "existed as a legal use before the effective date" of the Ordinance or if the Property had been "lawfully operated or used" after the Ordinance was enacted. *See id.* § 10-10-1.

¶18    Cobblestone's Property is, and always has been, located in an agricultural zone, with the permitted uses expressly enumerated in the South Weber Code. *See id.* § 10-5E-2; *id.* § 10-1-10A. Although an STR is not expressly listed as a permitted use in an agricultural zone—which fact Cobblestone acknowledges—it nevertheless contends the use of the Property as an STR fits into the statutory definition of "dwelling" and therefore qualifies as a permitted use.

¶19    Prior to the adoption of the Ordinance, one of the permitted uses in an agricultural zone was "Dwellings, one-family." The South Weber Code defined "dwelling" as "[a] building designed and used for residential purposes including one-, two-, three- or four- family units, but not including apartments, boarding houses, hotels, lodging houses or tourist courts." *Id.* § 10-1-10. Relying on this definition, the district court concluded Cobblestone's use of the Property as an STR "does not fall within the definition of" "Dwelling, one-family." Specifically, the court concluded the use of the Property as an STR "does fall within" the enumerated exclusions from the permitted use of "dwellings," i.e., "boarding house" or "lodging house."

¶20 On appeal, Cobblestone contends the district court incorrectly interpreted the Ordinance by construing its terms restrictively rather than adhering to the "presumption . . . that would prefer permission to the property owner unless required otherwise." Specifically, Cobblestone points to the court's interpretation of the term "dwelling," and posits the court erred in concluding the use of the Property as an STR did not fall within this permitted use.

¶21 First, Cobblestone argues the use of the Property as an STR prior to the adoption of the Ordinance was permitted as a "dwelling" because a "dwelling" is merely "[a] building designed and used for residential purposes." *See id.* But this argument is unpersuasive because it focuses on only the building as a structure itself rather than the structure's use and wholly ignores the restriction that all dwellings located in an agricultural zone be limited to "one-family" dwellings. By neglecting to address the "one-family" restriction, Cobblestone has failed to "provide sufficient argument for ruling in its favor." *See Pinder v. Duchesne County Sheriff*, 2020 UT 68, ¶ 36, 478 P.3d 610 (quotation simplified). Therefore, Cobblestone has not met its burden of persuasion on appeal.

¶22 Second, Cobblestone takes issue with the district court's determination that the use of the Property as an STR falls within the exclusion from the definition of dwelling. In particular, it asserts the court erred in ruling that the "usual meaning of 'lodging' included [STRs]." The court rejected Cobblestone's argument that "use of the Property is not as a boarding house, hotel, lodging house, or tourist court," concluding instead that the use of the Property as an STR "does fall within these forms of uses." It reasoned that "Boarding house and/or rooming house" is defined in the South Weber Code as "[a] building used for the purpose of providing meals *or lodging,* or both meals and lodging *for pay or compensation* of any kind for three (3) or more persons." (Quoting South Weber, Utah, Code § 10-1-10.) And while

"lodging" is not defined in the South Weber Code, the court explained the dictionary definition and the "usual meaning" of that term "includes the[] type of [STRs] for which the Property has been used."

¶23    We see no error in the district court's interpretation of the South Weber Code on this point. In defining "lodging," the court first looked to the South Weber Code. Finding that the term was not defined, the court then consulted two separate dictionaries to ascertain the term's "usual meaning." *See* South Weber, Utah, Code § 10-1-10 (providing that words not defined in the South Weber Code "shall be given their usual meaning as found in the English dictionary unless the context of the words clearly indicate a different meaning"). The first dictionary the court looked to defines "lodging" as "[a] place in which someone lives or stays temporarily." *Lodging*, Oxford English Dictionary, https://www.lexico.com/en/definition/lodging [https://perma.cc/AT5W-JV4S]. The second similarly defines "lodging" as including "sleeping accommodations" and "a temporary place to stay." *Lodging*, Merriam-Webster, https://www.merriam-webster.com/dictionary/lodging [https://perma.cc/BX5C-96FE]. In relying on these definitions, the court correctly determined the use of the Property as an STR falls within the South Weber Code's definition of "Boarding house and/or rooming house" and therefore is exempt from being classified as a "dwelling."[5]

¶24    In sum, the district court correctly determined that Cobblestone's use of the Property as an STR does not fit within the South Weber Code's definition of dwelling. Thus,

5. Cobblestone also appears to argue the district court's definition of the word "lodging" was incorrect because the court adopted dictionary definitions that were "more restrictive . . . of private property rights." However, the alternative definitions that Cobblestone cites would also dictate that use of the Property as an STR would constitute lodging.

Cobblestone's use of the Property as an STR was not a permitted, legal nonconforming use, and its operation as such constitutes a violation of the Ordinance. Accordingly, the court did not abuse its discretion by granting South Weber's motion for an injunction under Utah Code section 10-9a-802.

## II. The District Court Did Not Err in Rejecting Cobblestone's Equitable Estoppel Argument.

¶25    Cobblestone next argues that even if its use of the Property as an STR does not constitute a legal nonconforming use, thereby requiring it to have a business license, South Weber should be estopped from enforcing the Ordinance's business license requirement under the doctrine of equitable estoppel.

¶26    Equitable estoppel has three elements: (1) "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted"; (2) "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act"; and (3) "injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act." *Hall v. Peterson*, 2017 UT App 226, ¶ 29, 409 P.3d 133 (quotation simplified).

¶27    "Generally, the doctrine of estoppel is not assertable against the state and its agencies." *McLeod v. Retirement Board*, 2011 UT App 190, ¶ 20, 257 P.3d 1090 (quotation simplified). However, Utah courts have recognized a narrow exception to this general rule for "unusual circumstances where it is plain that the interests of justice so require." *Eldredge v. Utah State Ret. Board*, 795 P.2d 671, 675 (Utah Ct. App. 1990) (quotation simplified). In cases where a claimant asserts estoppel against a governmental entity, the exception applies only if the claimant "show[s] that the entity made very clear, well-substantiated representations." *Myers v. Utah Transit Auth.*, 2014 UT App 294, ¶ 20, 341 P.3d 935 (quotation simplified). Absent a "specific statement or written

representation" by the government, the exception does not apply and the estoppel claim fails. *Anderson v. Public Service Comm'n*, 839 P.2d 822, 828 (Utah 1992).

¶28    Cobblestone posits South Weber should be estopped from requiring Cobblestone to obtain a business license to operate the Property as an STR for two main reasons. First, South Weber was aware that Cobblestone was operating an STR without a business license for many months, but it did not complain of the missing license before filing for injunctive relief. Second, South Weber's "website expressly stated that [South Weber] no longer required a business license for rental use of property." Neither argument is persuasive.

¶29    First, South Weber's failure to enforce the Ordinance, including the business license requirement, prior to initiating the proceeding for injunctive relief is insufficient to invoke the exception allowing a claimant to assert estoppel against a governmental entity. Our supreme court has long recognized that "failure to enforce zoning for a time does not forfeit the power to enforce." *Town of Alta v. Ben Hame Corp.*, 836 P.2d 797, 803 (Utah Ct. App. 1992); *see also Salt Lake County v. Kartchner*, 552 P.2d 136, 138 (Utah 1976) ("Ordinarily a municipality is not precluded from enforcing its zoning regulations[] when its officers have remained inactive in the face of such violations."). Accordingly, assuming without deciding that South Weber did not consistently enforce the Ordinance, such failure to enforce does not render South Weber powerless to enforce its regulations at a later time.

¶30    Second, the statements on South Weber's website regarding the business license requirements for rental properties do not apply to STRs. During the relevant time period, South Weber's website stated, "As of August 2016, South Weber no longer requires a business license for a *rental unit*." (Emphasis added.) And at that time, section 3-2-1(A) of the South Weber Code defined "Rental Units" as "[a] building or part of a building

that is used or designated for use as a residence by one or more persons, and is available to be rented, loaned, or leased for a period of *one month or more*." (Emphasis added.) As an STR, the Property does not fit within this statutory definition of "Rental Units." Consequently, South Weber's website did not contain a "specific statement or written representation" that would warrant estopping South Weber from enforcing its business license requirement for STRs. *See Anderson*, 839 P.2d at 828.

¶31 The district court correctly concluded Cobblestone had not proved that South Weber should be estopped from enforcing the Ordinance. Because Cobblestone's use of the Property as an STR without a valid business license violates the Ordinance, South Weber was entitled to its requested injunction under Utah Code section 10-9a-802. Therefore, the court did not abuse its discretion in granting South Weber's motion.

CONCLUSION

¶32 The district court did not abuse its discretion by enjoining Cobblestone's use of the Property as an STR without a business license in violation of the Ordinance. The court correctly determined that Cobblestone's use of the Property as an STR prior to the adoption of the Ordinance was not a permitted, legal nonconforming use. The court also properly rejected Cobblestone's argument that South Weber should be estopped from requiring Cobblestone to obtain a business license to operate the Property as an STR. We therefore affirm.

————