2024 UT App 49

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAMES B. MOORING,
Appellant.

Opinion
No. 20230253-CA
Filed April 4, 2024

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 111904457

J. Adam Knorr and Chase G. Peterson,
Attorneys for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     In 2012, James B. Mooring entered into a plea agreement in which he agreed, among other things, to pay $50,000 in court-ordered restitution. At that time, based on his ability to pay, Mooring began making $100 monthly payments. Mooring continued to make $100 monthly payments until June 2022, at which point the State filed a motion asking the district court to revisit Mooring's ability to pay. Mooring submitted an updated financial declaration to the court, and in 2023, the court entered an order adjusting Mooring's monthly restitution payment to $1,100 per month. The court did not change the total amount of

court-ordered restitution owed, however, leaving that amount set at $50,000.

¶2 Mooring appeals the district court's order adjusting his restitution payment schedule. He argues that the court erred in adjusting the payment schedule because (1) the adjustment is prohibited under Utah law, (2) the adjustment violates double jeopardy, (3) the adjustment violates substantive due process, and (4) the State should be equitably estopped from seeking an adjustment. We are not persuaded by any of Mooring's arguments, and we accordingly affirm the district court's order.

BACKGROUND

¶3 In 2011, the State charged Mooring with one count of securities fraud, a second-degree felony, and one count of sales by an unlicensed agent, a third-degree felony. The following year, Mooring entered into a plea in abeyance agreement with the State wherein he agreed to plead guilty to one count of sales by an unlicensed agent and to comply with various conditions, including that he pay $50,000 in "court-ordered restitution." In exchange, the State agreed to reduce the third-degree felony plea to a class B misdemeanor after a thirty-six-month abeyance period.

¶4 Under the conditions of the plea agreement, Mooring would "make monthly restitution payments in an amount to be determined by the parties, or an amount otherwise approved by the Court based upon the financial resources of [Mooring] and the burden the payment of restitution will impose with regard to [Mooring's] other obligations." If Mooring paid the full amount of the court-ordered restitution by the time the abeyance period ended, he would be sentenced to time served. Otherwise, he would be sentenced to court-supervised probation and would "remain on court-supervised probation until the $50,000.00 . . . is

paid in full." Payments were set to begin "on or before May 25, 2012," at the rate of $100 per month.

¶5    In June 2016, at the end of the abeyance term, the district court found that Mooring had "complied with the terms and conditions of the plea agreement" and was "current in his court-ordered restitution payments." Accordingly, the court entered an order reducing Mooring's felony plea to a class B misdemeanor plea. The court also ordered Mooring to "continue to make monthly restitution payments in the same amount as [has] been made to date" and to "remain on court-supervised probation until the court-ordered restitution is paid in full."

¶6    In August 2018, the State filed a motion requesting that the district court extend Mooring's probation "for an indefinite period of time, or until [Mooring] has paid his restitution in full." Shortly thereafter, the court issued an order (2018 Order) entering Mooring's conviction and ordering that he be placed on court-supervised probation "for an indefinite period [of] time, or until [Mooring] has paid his restitution in full." The court noted that Mooring's restitution balance owed was $42,600, and it ordered Mooring to "continue to pay restitution . . . at a monthly rate of no less than $100.00 per month."

¶7    In June 2022, the State moved for a review hearing to determine whether the probation should continue or whether the outstanding restitution balance should be referred to the Office of State Debt Collection. The motion also requested that Mooring be required to complete a new financial declaration. The court granted the State's motion and ordered Mooring to file an updated financial declaration and a written response to the State's request for a review hearing. Mooring submitted a new financial declaration and a memorandum opposing the State's request for a review hearing. He argued that the court should deny the State's request because changing the "longstanding" arrangement would constitute a modification of Mooring's restitution order that

would violate Utah law, "double jeopardy, estoppel, and substantive due process."

¶8 After reviewing Mooring's updated financial declaration and hearing argument on the matter, the district court disapproved the $100 monthly payments. The court found that Mooring had the ability to "pay substantially more than he has been paying," and it rejected his argument that a change to the payment schedule is a modification of the restitution order prohibited under Utah law. The court did not, however, determine what the change to Mooring's payments should be. Instead, the court ordered the parties to first confer with respect to the new monthly payment amount; if the parties could not reach a stipulation as to the amount, the court would establish it, taking into account Mooring's current ability to pay.

¶9 Pursuant to the district court's order, the parties conferred regarding an increased monthly restitution payment amount; however, they were not able to come to an agreement. As a result, in March 2023, the court entered an order of restitution. The new order did not change the total amount of court-ordered restitution owed ($50,000), but it "adjust[ed] the monthly payment schedule to reflect the financial resources of [Mooring] as disclosed in his financial declaration . . . and his demonstrated ability to pay more than his previous monthly payment indicated." Relying on sections 77-32b-103(3)(b) and 77-38b-205(2)(a)(ii) of the Utah Code, the court increased the monthly payment "from $100 per month to not less than $1,100 per month." The court explained that this increase was justified "because of what appears to be a significant increase in [Mooring's] ability to pay." Relying on Mooring's updated financial declaration, the court found that Mooring had a gross monthly income of around $13,000, and that he had multiple voluntary and discretionary monthly expenses, including spending $1,000 on donations, $200 on entertainment, and $150 in retirement deposits. The court concluded that because these voluntary and discretionary expenses "can be modified,"

Mooring "is able to allocate more money towards the restitution he currently owes the victims."

ISSUE AND STANDARDS OF REVIEW

¶10　Mooring now appeals, raising one issue for our review. Mooring argues the district court erred in adjusting his monthly restitution payment schedule. "We will not disturb a district court's restitution order unless it exceeds that prescribed by law or [the court] otherwise abused its discretion. But we review a district court's interpretation of restitution statutes for correctness." *State v. Hamilton*, 2018 UT App 202, ¶ 15, 437 P.3d 530 (quotation simplified). Likewise, constitutional issues are questions of law that are reviewed for correctness. *See State v. Archibeque*, 2022 UT 18, ¶ 11, 509 P.3d 768.

ANALYSIS

¶11　Mooring contends the district court erred in adjusting his monthly restitution payment schedule. As part of this challenge, Mooring raises four distinct arguments. First, he argues the court erred in determining that the adjustment did not violate Utah law. Second, he argues the adjustment violates the federal Double Jeopardy Clause. Third, he argues the adjustment violates his federal substantive due process rights. Fourth, he argues the State should be equitably estopped from seeking an adjustment. We address each argument in turn.

I. Utah Law

¶12　Mooring first asserts the district court violated Utah law when it adjusted his monthly restitution payment. Specifically, Mooring contends the court's adjustment constitutes a modification to his restitution order that is time-barred under

section 77-38b-205 of the Utah Code.[1] This argument is not supported by the plain language of the statute.

¶13 Section 77-38b-205 sets forth the process for entering an order for restitution. Subsection (1) outlines the court's obligation to order restitution upon conviction as part of the sentence

---

1. The State and Mooring disagree as to whether Utah Code section 77-38b-205 is applicable in this case. Section 77-38b-205 was enacted in 2021, s*ee* Act of Mar. 17, 2021, ch. 260, § 96, 2021 Utah Laws 1679, 1739–40, and the statute therefore did not exist in 2012 when Mooring entered his plea agreement and the court entered its restitution order. The State contends that we should apply the version of the statute in effect when Mooring entered his plea agreement, whereas Mooring contends that we should apply section 77-38b-205 because it was in effect in 2023 when the district court ordered the adjustment. *See Rodriguez v. Crosby*, 2024 UT App 7, ¶¶ 12–13, 543 P.3d 206 (stating that courts are "required to apply the version of the statute as it existed at the time of the event regulated by the law in question," and explaining how to determine "what event is regulated by the statute" (quotation simplified)). Under Mooring's formulation of the argument, i.e., that the court's adjustment order was a modification of the existing restitution order, this distinction is relevant because section 77-38b-205 provides time frames for filing a motion to modify an existing order for restitution. *See* Utah Code § 77-38b-205(6) (2022). This period is three years for felonies and one year for misdemeanors. *Id.* § 77-38b-205(5). Therefore, if section 77-38b-205 applies, any modification to Mooring's restitution order might be time-barred since Mooring was sentenced on his misdemeanor in 2016 when the court entered his conviction and ordered him to remain on court-supervised probation. Ultimately, as explained below, it is of no consequence in this case whether the filing deadlines imposed by section 77-38b-205 apply because the court did not modify the restitution order.

imposed. Utah Code § 77-38b-205(1) (2022). In cases where the defendant "enters a plea in abeyance . . . that includes an agreement to pay restitution, the court shall order the defendant to pay restitution in accordance with the terms of the plea in abeyance." *Id.* § 77-38b-205(1)(b).

¶14  After the court has entered "an order . . . to pay restitution under Subsection (1)," the court must then take two additional actions. *Id.* § 77-38b-205(2)(a). First, the court must "enter an order to establish a criminal accounts receivable." *Id.* § 77-38b-205(2)(a)(i). Second, the court must "establish a payment schedule for the criminal accounts receivable." *Id.* § 77-38b-205(2)(a)(ii). Both the criminal accounts receivable and the payment schedule are to be established in accordance with section 77-32b-103, which provides factors a court shall consider when establishing a "payment schedule." *Id.* § 77-32b-103(3)(b) (listing the victim's needs, the defendant's other obligations and ability to pay, and any other relevant circumstances as factors to consider). Once this process is complete, "[i]f the defendant objects to the order for restitution *or* the payment schedule, the court shall allow the defendant to have a hearing on the issue." *Id.* § 77-38b-205(3) (emphasis added).

¶15  Here, the district court relied on sections 77-32b-103(3)(b) and 77-38b-205(2)(a)(ii) when it ordered that Mooring's monthly payment be increased "from $100 per month to not less than $1,100 per month." As explained, these sections govern the payment schedule, not the underlying restitution order. And because the restitution order and the payment schedule are separate, the court may adjust one without disturbing the other. Accordingly, the court's adjustment, which undisputedly did not change the amount of court-ordered restitution owed under the original restitution order, did not constitute a modification of the restitution order. Rather, the adjustment was made to only the payment schedule and therefore was allowed under Utah law.

## II. Double Jeopardy

¶16    Next, Mooring asserts the district court violated his federal protection against double jeopardy when it adjusted his monthly restitution payment. This argument misses the mark, however, because the court's payment-modification order did not change Mooring's original sentence.

¶17    "The Double Jeopardy Clause embodies three separate protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense." *State v. Rodrigues*, 2009 UT 62, ¶ 36, 218 P.3d 610 (quotation simplified). "However, resentencing per se does not implicate the double jeopardy protection from multiple punishments." *Id.* (quotation simplified). Rather, double jeopardy bars resentencing only where "the defendant has developed a legitimate expectation of finality in his original sentence." *Id.* (quotation simplified).

¶18    Here, Mooring contends the district court violated his protection against multiple punishments for the same offense because the court's adjustment of his restitution payments "increase[ed] the severity of his existing punishment" after he "justifiably and reasonably believed his restitution order was final." But Mooring's position on this point again conflates an adjustment to the payment schedule with a modification of the restitution order. As explained above, the court's order adjusted only the minimum monthly payment, not the total amount of restitution owed. In other words, the court did not "resentence" Mooring because it did not modify his original sentence. And because Mooring was not resentenced, his expectation in the finality of his sentence was not disturbed. As such, the court's adjustment did not implicate double jeopardy.

III. Substantive Due Process

¶19 Mooring asserts his federal substantive due process rights were violated when the district court adjusted his restitution payment schedule. We are not convinced.

¶20 Due process prevents the State from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Substantive due process, as opposed to procedural due process, addresses the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Smith Inv. Co. v. Sandy City*, 958 P.2d 245, 251 n.7 (Utah Ct. App. 1998) (quotation simplified). "A party makes a substantive due process claim by alleging, for example, a deprivation of a fundamental right. Fundamental rights are protected against government action regardless of the fairness of the procedures used by the government." *Nelson v. City of Orem*, 2013 UT 53, ¶ 28, 309 P.3d 237 (quotation simplified).

¶21 Mooring contends that in certain circumstances, the "Federal Due Process Clause imposes a limitation on the ability of a court to alter a sentence after a final sentence has been imposed." To support his position, Mooring relies on a four-factor balancing test created by the District of Columbia Court of Appeals in *Jordan v. United States*, 235 A.3d 808 (D.C. 2020). This test allows a court to determine "[w]hether a defendant's expectation of finality in a sentence has crystalized, and is therefore protected by due process," by "balancing several non-exclusive factors." *Id.* at 821. These factors are (1) the amount of time elapsed between the imposition of a sentence and the attempted imposition of an increased sentence, (2) the reasonableness of the defendant's expectations of finality, (3) the government's diligence in seeking the change, and (4) prejudice resulting from the change. *Id.* at 821–

22. But Mooring's reliance on *Jordan* is problematic for two reasons.

¶22　First, *Jordan* is not controlling in Utah. *Cf. State v. Lopez*, 886 P.2d 1105, 1109 (Utah 1994) ("[I]t has been well established for almost two centuries that the United States Supreme Court is the final arbitrator of federal constitutional issues."). While we may look to the court's analysis in *Jordan* as guidance in reaching a decision, we are by no means required to or bound by the decision. *Cf. Zimmerman v. University of Utah*, 2018 UT 1, ¶ 19, 417 P.3d 78 (explaining that while Utah courts may look to decisions from other jurisdictions for guidance on a state constitutional question, such decisions are "by no means binding"). Because Mooring has offered no explanation as to why this balancing test—which so far as we are aware has been utilized by only the *Jordan* court—should be used as the standard in Utah, we decline to apply it here.

¶23　Second, even if we were to adopt the *Jordan* balancing test, it would not help Mooring because *Jordan* is factually distinguishable. In *Jordan*, the defendant was initially sentenced to thirty years to life for a felony murder conviction. 235 A.3d at 812. Thereafter, the defendant filed a motion to correct his sentence on the ground that the trial court had applied the wrong sentencing law. *Id.* The trial court granted the defendant's motion and resentenced him to twenty years to life. *Id.* Sixteen years later, the government moved to correct the sentence, arguing that the original thirty-year sentence was correct. *Id.* The defendant opposed the motion, asserting that increasing his sentence would violate due process. *Id.* at 813. Ultimately, the trial court was unpersuaded by the defendant's due process argument and resentenced him in accordance with the government's request, which resulted in an "overall increase" to his sentence. *Id.* at 813–14. On appeal, the District of Columbia Court of Appeals was persuaded by the defendant's argument, concluding that although a defendant's due process right to liberty is diminished

post-sentencing and generally a defendant has no expectation of finality in an illegal sentence, "the Due Process Clause may, in extreme circumstances, impose a temporal limit on the power of a court to *increase a sentence*, even an illegal one." *Id.* at 821 (emphasis added).

¶24  As has been discussed extensively in Sections I and II above, here the district court's order did not alter—let alone increase—Mooring's sentence. The adjustment was made only to Mooring's restitution payment schedule, *not* to the underlying restitution order. Thus, the proposition for which *Jordan* stands is not applicable in this case. The action taken by the court did not work a change to Mooring's sentence.

¶25  Because Mooring relies solely[2] on the balancing test in *Jordan*, which is both factually distinguishable and non-controlling, he has not demonstrated that the adjustment to his payment schedule violates substantive due process.

---

2. In passing, Mooring cites *Monson v. Carver*, 928 P.2d 1017 (Utah 1996), for the proposition that a court is prohibited from "mak[ing] more burdensome the punishment for a crime, after its commission." *Id.* at 1026 (quotation simplified). But the sentence from which this language was lifted describes the prohibition against ex post facto laws guaranteed under Article 1, Section 10 of the United States Constitution. *See id.* ("An *ex post facto law* is one that punishes as a crime an act previously committed, which was innocent when done [or] which *makes more burdensome the punishment for a crime, after its commission . . . .*" (emphasis added) (quotation simplified)). Indeed, the issue in *Monson* was whether the retroactive application of a statute requiring restitution as a condition of parole violated the defendant's protections against ex post facto laws guaranteed by both the state and federal constitutions. *See id.* Resolution of this issue did not involve a substantive due process analysis.

## IV. Equitable Estoppel

¶26 Lastly, Mooring asserts the State should be equitably estopped from seeking an adjustment to the payment schedule. Equitable estoppel generally has three elements:

> (1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*South Weber City v. Cobblestone Resort LLC*, 2022 UT App 63, ¶ 26, 511 P.3d 1207 (quotation simplified). Estoppel claims made against the government are different, however, because "as a general rule, estoppel may not be invoked against a governmental entity." *Terry v. Retirement Board*, 2007 UT App 87, ¶ 14, 157 P.3d 362 (quotation simplified). Notwithstanding this general prohibition, Utah courts have recognized one "narrow exception" that allows claimants to assert estoppel against the state and its agencies in "unusual circumstances where it is plain that the interests of justice so require." *South Weber*, 2022 UT App 63, ¶ 27 (quotation simplified). This exception applies only if the claimant can show that the "authorized government entit[y]" made "very specific written representations." *Monarrez v. Utah Dep't of Transp.*, 2014 UT App 219, ¶ 35, 335 P.3d 913 (quotation simplified), *aff'd*, 2016 UT 10, 368 P.3d 846.

¶27 Mooring contends the State should be estopped from adjusting his monthly restitution payment amount because "after [Mooring] had been paying his restitution properly for years, the State specifically moved the district court to allow [Mooring] to remain on probation 'indefinitely' while he made his $100 monthly payments," and Mooring "relied on this arrangement to

structure his life and expenses in a manner that allows him to pay his required $100 per month." This argument is unpersuasive. Not only has Mooring failed to establish the three elements of estoppel, he has not shown why it would be appropriate to consider his claim under the narrow exception allowing a government entity to be estopped.

¶28   First, the State's decision to seek an adjustment to the payment schedule was entirely consistent with the terms of Mooring's plea agreement. As discussed above, the adjustment to the payment schedule did not change the terms of the plea agreement. Under every court order issued in this case, Mooring has consistently been required to pay $50,000 in court-ordered restitution. And the only thing in the plea agreement itself about the amount of the monthly restitution payments is that the amount is "to be determined by the parties, or an amount otherwise approved by the Court based upon the financial resources of [Mooring] and the burden the payment of restitution will impose with regard to [Mooring's] other obligations." Thus, not only does the written plea agreement fail to set the monthly payment at $100, it explicitly outlines a procedure by which the payment amount may be determined by the parties or the court.

¶29   Moreover, Mooring misconstrues the language in the 2018 Order extending his court-supervised probation. In that order, the court instructed that Mooring's probation, "with all of its conditions and restrictions, shall be extended for an indefinite period [of] time, or until [Mooring] has paid his restitution in full." Mooring construes this language as the court ordering that he be allowed "to remain on probation 'indefinitely' while he made his $100 monthly payments." But this is not what the court did. Rather, "indefinitely" refers only to Mooring's plea-in-abeyance term and reinforces that Mooring will remain under the supervision of the court and bound by the terms of his plea agreement until he finishes paying his court-ordered restitution. It does not, as Mooring contends, refer to the amount of the

monthly payments, nor does it set the payments at $100 indefinitely.[3]

¶30 Next, Mooring has not shown injury because of the adjusted monthly payment. The district court adjusted the monthly payment based on Mooring's updated financial declaration, which listed Mooring's current voluntary and discretionary expenses at $1,350 per month. The court's order adjusted Mooring's monthly restitution payment to $1,100—a level well within his means. Indeed, even with the increased payment, Mooring still maintains an excess of $250 per month for voluntary and discretionary expenses to be allocated as he sees fit.

¶31 Because Mooring has not proved the three general elements required to succeed on an estoppel claim, we have no need to consider the additional elements that would be required to estop the State from seeking an upward adjustment to Mooring's monthly restitution payment.

CONCLUSION

¶32 The district court properly adjusted Mooring's monthly restitution payment amount. The adjustment was made to only the payment schedule, not to the underlying restitution order, and therefore it was not a modification of the plea agreement that could be time-barred under Utah law. And because the adjustment implicated only the payment schedule and not the restitution order, the adjustment did not violate Mooring's rights against double jeopardy or to substantive due process. Finally, the

---

3. Mooring also fails to grapple with the fact that in the 2018 Order, the district court instructed Mooring to "continue to pay restitution . . . at a monthly rate of *no less than* $100.00 per month." (Emphasis added.) Thus, it appears the court was specifically leaving open the possibility that the amount of the monthly payment could change at some point in the future.

State was not estopped from seeking an adjustment to the payment schedule because the State never agreed to allow Mooring to pay $100 per month indefinitely and Mooring was not harmed by the adjustment.

¶33    Affirmed.

———————